[991 NE2d 200, 969 NYS2d 426]

The People of the State of New York, Respondent, v Chester J. Thomas, Appellant.

Argued April 30, 2013; decided June 4, 2013

## POINTS OF COUNSEL

*Timothy P. Donaher, Monroe County Public Defender*, Rochester (*Janet C. Somes* of counsel), for appellant. The trial court committed reversible error when it prevented defense counsel, in summation, from talking about the People's failure to call Officer McKnees. (*People v Tankleff*, 84 NY2d 992; *People v Williams*, 5 NY3d 732; *People v Brinson*, 265 AD2d 879; *People v Ruine*, 258 AD2d 278; *Noce v Kaufman*, 2 NY2d 347; *People v*

*Rodriguez*, 38 NY2d 95; *Gordon v People*, 33 NY 501; *People v Gonzalez*, 68 NY2d 424; *People v Concepcion*, 17 NY3d 192; *Williams v Brooklyn El. R.R. Co.*, 126 NY 96.)

*Sandra Doorley, District Attorney*, Rochester (*Geoffrey Kaeuper* of counsel), for respondent. The court did not prevent the defense from making any legitimate argument in summation. (*People v Tankleff*, 84 NY2d 992; *People v Ashwal*, 39 NY2d 105; *People v Hall*, 18 NY3d 122; *People v Savinon*, 100 NY2d 192; *People v Gonzalez*, 68 NY2d 424; *People v Williams*, 5 NY3d 732; *People v Smith*, 16 NY3d 786; *People v Ortiz*, 83 NY2d 989; *People v McDaniel*, 81 NY2d 10; *People v Edwards*, 14 NY3d 733.)

**OPINION OF THE COURT**

SMITH, J.

We hold that the trial court erred in prohibiting defendant from making a "missing witness" argument, but that the error was harmless.

I

Defendant was charged with criminal sexual act in the first degree, criminal contempt and two counts of assault. The complainant was a woman with whom defendant had had a turbulent relationship for several years, and with whom he had three children. In the course of the relationship, the complainant had three times called either 911 or the police to complain that defendant was abusing her physically; the most recent of these incidents, in July 2005, had led to a "no contact" order of protection. At the complainant's request, the order was later replaced by one prohibiting only "offensive contact." The latter order was in force when the events involved in this case took place in November 2006.

According to the complainant's testimony, on November 27, she and defendant had an argument in which he pulled her hair and punched her face, leading her to threaten him with a knife and drive him out of the house where they had been living together. She went with her children to her father's for two days, and returned with them to her home on November 29. Defendant arrived at the house shortly after her return. She asked him to leave and, when he refused, she started preparing to leave herself.

This began, according to the complainant, a series of violent acts that extended over 14 hours. She said that defendant dragged her into a spare room, climbed on top of her and punched her in the face and head. He then ordered her into the bedroom where their baby was sleeping, picked up a box cutter (which she had kept there to protect herself from him), and, by threatening her with this weapon, forced her to submit to anal intercourse, in the course of which he bit her in the back. He then ordered her to tend to the baby while he followed her around, holding the box cutter all the while.

The complainant's account continued: Defendant masturbated on her and then chained her to him by the ankle, using a bicycle chain or dog chain and padlock. The couple lay down, chained together, for a few hours. In the morning, defendant unchained her. After she put one of her children on the bus to school, defendant ordered her upstairs and beat her with the chain. Defendant finally left, after ripping a telephone off the wall, and the complainant ran to a neighbor's house and called 911.

The complainant's testimony was corroborated in part by photographs taken within hours of the incident, which show bruises on her face and back, and by testimony from a doctor who saw her that day and observed bruises and swelling around her eyes, bruises on her back and left ankle, and rectal bleeding that was, in the doctor's opinion, consistent with anal penetration. The doctor also observed a bite mark on the complainant's back; saliva found in the bite mark contained defendant's DNA.

At trial, defendant's counsel focused on what he suggested were weaknesses in the People's case. The box cutter and the chain had not been found; the complainant testified that defendant took them when he left. More important to this appeal, defense counsel emphasized a statement the complainant had given to a police officer who responded to her 911 call. The officer wrote the statement on the basis of his interview with the complainant, and the complainant signed it. It omitted a number of details that were in the complainant's later testimony, including the anal rape.

On redirect examination, the complainant was asked why her statement omitted mention of forced anal intercourse. She replied that she had told the officer about that event, and the officer "told me that no judge would ever believe that happened because me and Chester Thomas was in an intimate relationship." The officer did not testify.

In his summation, defense counsel argued that this part of the complainant's testimony was incredible. "[W]e've changed as a society," he argued. "No police officer is going to come up there and say, 'Oh, no one is going to believe you, this was your boyfriend.' That's not where we are today." That part of his argument drew no objection. But the prosecutor did object when counsel added: "And if that's, in fact, what that police officer said, then where was he, where was that police officer on the stand to say: You know what, I didn't write it down. I didn't think she was telling me the truth. He didn't testify to that." The trial court sustained the objection and directed the jury to disregard counsel's comment. Counsel tried again to make the missing witness argument, with the same result.

After summations, defendant moved for a mistrial on the basis of this ruling. The court denied the motion, saying that counsel should have asked for a missing witness instruction if he wanted to make a missing witness argument. Defendant was convicted of criminal sexual act, criminal contempt and one of the two assault counts; he was acquitted on the other assault charge.

The Appellate Division affirmed (*People v Thomas*, 85 AD3d 1572 [4th Dept 2011]). That court acknowledged that a lawyer who has not sought a missing witness instruction " 'may nonetheless try to persuade the jury to draw inferences from the People's failure to call an available witness with material, noncumulative information about the case' " (*id.* at 1573, quoting *People v Williams*, 5 NY3d 732, 734 [2005]). The court said, however, that "[i]n the event that the officer would have merely confirmed the victim's story, such testimony would have been cumulative" and that "defendant never made an offer of proof with respect to the officer's prospective testimony" (*id.* at 1573). The Appellate Division concluded that "there was no good faith basis" for comment by defense counsel on the People's failure to call the officer (*id.*). A Judge of this Court granted leave to appeal, and we now affirm.

## II

The courts below clearly erred in holding that defense counsel's missing witness argument was improper. The trial court's theory that a request for a missing witness instruction is a prerequisite to a missing witness argument is, as the Appellate Division recognized, flatly contrary to what we said in

*Williams* (5 NY3d at 734). The Appellate Division affirmed on the alternative grounds that the officer's testimony may have been cumulative and defendant failed to make an offer of proof. This approach may have been impermissible under *People v LaFontaine* (92 NY2d 470 [1998]) and *People v Concepcion* (17 NY3d 192 [2011]).

In any event, the Appellate Division's alternative grounds are also unsound. Just before making the missing witness argument, counsel had attacked as incredible the complainant's uncorroborated testimony as to what the officer said to her; confirmation of that testimony from the officer would not have been cumulative (*see People v Rodriguez*, 38 NY2d 95, 101 [1975]). And counsel had no obligation to make an offer of proof as a predicate for a missing witness argument. It is a premise of such an argument, as it is of a missing witness instruction, that the witness is in the control of the party that failed to call him (*see People v Savinon*, 100 NY2d 192, 197 [2003]). A party making such an argument, like one requesting such an instruction, "can hardly know what [the] witness knows or what the witness would say if called" (*People v Kitching*, 78 NY2d 532, 537 [1991]).

██ The question remains whether the error was harmless. We conclude that it was. Strong evidence corroborated the complainant's testimony that defendant anally raped her: rectal bleeding consistent with penetration and a bite mark on her back containing defendant's DNA. Also, the doctor who examined the complainant testified that the complainant told her about the anal rape—thus diminishing the significance of the omission of that incident from the statement the complainant gave the police officer.

Defendant argues that, while the forensic evidence may show that anal intercourse took place, it cannot show that the intercourse was not consensual. Theoretically, this is a valid point. But in light of all the evidence in this case—the long, abusive relationship, the complainant's detailed and consistent account of her ordeal, the bruising and swelling on her body, the bite mark, her prompt report of the rape to the doctor—it is hard to imagine a juror who would find it reasonable to believe that voluntary sex was part of this evening's events. The possibility that defense counsel could have achieved an acquittal on the criminal sexual act charge had he been allowed to make a missing witness argument is very remote.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, PIGOTT and RIVERA concur; Judge ABDUS-SALAAM taking no part.

Order affirmed.