### Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  May 14, 2015                    106037
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                MEMORANDUM AND ORDER

FREDERICK BROWN,
                    Appellant.
_____

Calendar Date:   March 27, 2015

Before:  Garry, J.P., Egan Jr., Lynch and Clark, JJ.

_____

        Easton Thompson Kasperek Shiffrin, LLP, Rochester (William
T. Easton of counsel), for appellant.

        Mark D. Suben, District Attorney, Cortland (Elizabeth
McGrath of counsel), for respondent.

_____

Egan Jr., J.

        Appeal from a judgment of the County Court of Cortland
County (Campbell, J.), rendered March 21, 2013, upon a verdict
convicting defendant of the crimes of rape in the first degree
(six counts), rape in the second degree (three counts), rape in
the third degree, criminal sexual act in the first degree,
criminal sexual act in the second degree, attempted criminal
sexual act in the first degree and sexual abuse in the first
degree.

        In 2011, defendant, the live-in boyfriend of the victim's
mother, was charged in a superseding indictment with various
crimes based upon his sexual contact with the victim (born in
1989) between 2001 and 2005.  The victim disclosed the abuse to

law enforcement in July 2010.  Following a jury trial, defendant was convicted as charged and thereafter was sentenced to an aggregate prison term of 120 years – reduced by operation of law to 50 years (see Penal Law § 70.30 [1] [e] [vi]) – and five years of postrelease supervision.  This appeal by defendant ensued.

Defendant does not challenge either the legal sufficiency or the weight of the evidence adduced at trial, contending instead that County Court committed various evidentiary rulings. In defendant's view, these errors individually and collectively impaired his ability to mount a defense, thereby depriving him of a fair trial and warranting reversal of his convictions.  For the reasons that follow, we find defendant's arguments to be unpersuasive and, accordingly, affirm the judgment of conviction.

Defendant initially takes issue with County Court's Molineux ruling – specifically, the court's decision to allow the victim to testify as to multiple uncharged acts of rape.  Prior to trial, the People sought permission to introduce testimony from the victim to the effect that defendant raped her approximately twice a week over the course of five years, arguing that such proof provided necessary background information, established the victim's state of mind (as well as defendant's motive and intent), eliminated the possibility of a mistake or accident and was relevant to the element of forcible compulsion. County Court thereafter issued a written decision, wherein it expressly acknowledged the two-part Molineux test (see People v Rivera, 124 AD3d 1070, 1073 [2015]), and granted the People's application.

At trial, the People asked the victim what transpired after defendant first had intercourse with her, in response to which the victim testified that "[t]hings kept going the way they did that first time" and, on average, defendant would come into her room "at least twice a week" to have sex with her.  Defendant's objection to such testimony was duly noted and overruled.[1]

_____

[1]  At the conclusion of the victim's direct examination, County Court gave a limiting instruction to the jury, advising it that such testimony could only be considered "on the questions of

Cross-examination of the victim ensued, during the course of which defense counsel twice characterized the victim's testimony in this regard as an assertion that she had been raped by defendant "upwards of 500 times" over the course of a five-year period — a number that defense counsel, in an apparent effort to discredit the victim, continued to emphasize in his summation.[2] Defendant now argues that the admission of this testimony — attributing to him 500 uncharged acts of rape — was highly prejudicial and operated to deprive him of a fair trial.

To the extent that defendant's argument on this point has been preserved for our review, we find it to be lacking in merit. Without belaboring the point, we are satisfied that the victim's testimony regarding the uncharged acts of rape was probative of, among other things, the element of forcible compulsion (see People v Maggio, 70 AD3d 1258, 1260 [2010], lv denied 14 NY3d 889 [2010]; People v Shofkom, 63 AD3d 1286, 1288 [2009], lv denied 13 NY3d 799 [2009], appeal dismissed 13 NY3d 933 [2010]), her delay in reporting the charged crimes (see People v Justice, 99 AD3d

---

defendant's intent and motive to commit the crimes charged, the victim's failure to promptly disclose, the relationship between . . . defendant and the victim, and to explain the presence of forcible compulsion."  In so doing, County Court twice informed the jury that such testimony could not be considered "for the purpose of proving that . . . defendant had a propensity or predisposition to commit the crimes charged."  A similar limiting instruction was included in County Court's final charge to the jury.  Defense counsel did not object to the instructions as given, nor did he request any further instructions on this point.

[2]  The crux of trial counsel's argument was that, given the physical layout and composition of the victim's household during the relevant time period, it was implausible that defendant could have raped the victim 500 times without any other member of the household seeing or hearing one of these encounters or otherwise suspecting that something was amiss.  At oral argument, appellate counsel acknowledged that trial counsel's decision in this regard was a tactical one aimed at minimizing the impact of County Court's Molineux ruling and undermining the victim's credibility.

1213, 1215 [2012], lv denied 20 NY3d 1012 [2013]; People v
Maggio, 70 AD3d at 1260), the relationship between defendant and
the victim (cf. People v Cullen, 110 AD3d 1474, 1475 [2013], affd
24 NY3d 1014 [2014]; People v Carey, 92 AD3d 1224, 1225 [2012],
lv denied 18 NY3d 992 [2012]) and defendant's motive and intent
(cf. People v Thomas, 85 AD3d 1572, 1572 [2011], affd 21 NY3d 226
[2013]; see generally People v Lutchmansigh, 306 AD2d 540, 541
[2003], lv denied 100 NY2d 596 [2003]).  Additionally, while
County Court's written decision could have been more explicit
(see People v Nash, 87 AD3d 757, 759 [2011], lv denied 17 NY3d
954 [2011]), the record nonetheless reflects that County Court
was aware of its obligation to balance the probative value of
such evidence against its prejudicial effect, and we have no
quarrel with the court's determination on this point —
particularly in view of the accompanying limiting instructions.[3]

Defendant next contends that County Court erred in
precluding him from eliciting testimony that purportedly would
have established the victim's motive to fabricate her allegations
of rape against defendant.  On redirect examination, the victim
was asked if her husband, who was her boyfriend at the time that
she first disclosed defendant's conduct, had "ever ask[ed her] to
lie about what [defendant] had done," and the victim replied,
"No."  Thereafter, defense counsel asked the victim's husband,
who was called as a defense witness, on direct examination
whether he previously had attempted to persuade a former
girlfriend (who was not the victim here) to claim that her father
had raped her, and the victim's husband denied doing so.  Defense
counsel thereafter sought to question this former girlfriend, who
also was called as a defense witness, regarding whether the
victim's husband had in fact pressured her to make a false
allegation of rape against her own father.  The People's
objection to such testimony was sustained.  Defendant now
contends that the preclusion of this testimony deprived him of a
fair trial — reasoning that if the victim's husband tried to

_____

[3]  As for defendant's assertion that he similarly was
prejudiced by County Court's decision to permit certain testimony
regarding the details of a medical procedure that the victim
underwent, we deem any error in this regard to be harmless.

persuade a former girlfriend to falsely claim that her father had raped her, it necessarily follows that the victim's husband must have persuaded the victim to fabricate allegations of rape against defendant in this matter, thereby calling the victim's credibility into question. The fallacy in defendant's argument is readily apparent, as the proffered testimony neither bore upon the victim's credibility, demonstrated the victim's propensity for making false accusations nor established a motive for the victim to lie.

To be sure, a victim's "[p]rior false rape complaints may be admissible when they suggest a pattern casting substantial doubt on the validity of the [present] charges . . . or indicate a significant probative relation to such charges" (People v Blackman, 90 AD3d 1304, 1310 [2011], lv denied 19 NY3d 971 [2012] [internal quotation marks and citation omitted]). Here, however, the sought-after testimony was not offered to show that the victim had made prior false allegations of rape but, rather, to establish that her husband previously had attempted to persuade another woman to make such allegations with respect to her father. Similarly, while it is true that "[p]roof aimed at establishing a motive to fabricate is never collateral and may not be excluded on that ground" (People v Grant, 60 AD3d 865, 865 [2009] [internal quotation marks and citations omitted]), defendant's attempt to indirectly attack the victim's credibility by attacking the credibility of her husband — through an unrelated third party and regarding an allegation of rape that implicated neither the victim nor defendant — is simply too attenuated to withstand scrutiny. Notably, defense counsel thoroughly cross-examined the victim regarding her accusations against defendant, the circumstances surrounding her disclosure, the reasons underlying her delay in reporting the abuse and her husband's purported role in coming forward. For all of these reasons, we do not find that County Court abused its discretion in precluding the ex-girlfriend's testimony on this point.

Nor do we find merit to defendant's claim that County Court abused its discretion in permitting Megan Dietz, a licensed clinical social worker, to testify as an expert regarding Child Sexual Abuse Accommodation Syndrome (hereinafter CSAAS). To the extent that defendant challenges the admissibility of such

testimony in general, it is well settled that "[e]xpert testimony regarding CSAAS may be admitted to explain behavior of a victim that might appear unusual or that jurors may not be expected to understand" (People v Gregory, 78 AD3d 1246, 1247 [2010], lv denied 16 NY3d 831 [2011] [internal quotation marks and citation omitted]; see People v Williams, 20 NY3d 579, 583-584 [2013]; People v Hughes, 114 AD3d 1021, 1024 [2014], lv denied 23 NY3d 1038 [2014]; People v Pereau, 45 AD3d 978, 980 [2007], lv denied 9 NY3d 1037 [2008]). Specifically, such testimony may be offered to explain why the victim delayed in reporting the abuse (see People v LoMaglio, 124 AD3d 1414, 1416 [2015]; People v Gayden, 107 AD3d 1428, 1428-1429 [2013], lv denied 22 NY3d 1138 [2014]; People v Maggio, 70 AD3d at 1260; People v Pereau, 45 AD3d at 980).

As to whether Dietz was qualified to offer testimony on this topic, the trial court is vested with "the initial responsibility of evaluating whether an expert possesses the requisite skill, training, education, knowledge or experience from which it can be assumed that the information imparted or the opinion rendered is reliable" (People v Lashway, 112 AD3d 1222, 1223 [2013] [internal quotation marks and citations omitted]; see People v Munroe, 307 AD2d 588, 591 [2003], lv denied 100 NY2d 644 [2003]). The expert's competency, in turn, "can be derived from either formal training or [l]ong observation and actual experience" (People v Lashway, 112 AD3d at 1223 [internal quotation marks, citations and emphasis omitted]).

Here, Dietz testified at length regarding her educational background, which included a Master's degree in social work, as well as her relevant work experience. In this regard, Dietz indicated that she specialized in "trauma related to sexual and domestic violence" and, to that end, had interviewed or counseled approximately 600 victims of rape or sexual abuse − roughly 60% of whom were children. Dietz also outlined the training programs that she had conducted for various community-based groups and indicated that she had, on three prior occasions, testified in court as a CSAAS expert. Based upon Dietz's training and practical experience, "we are of the view that County Court providently exercised its discretion in permitting [her] to provide expert testimony" on the subject of CSAAS (People v

Lashway, 112 AD3d at 1224 [internal quotation marks and citation omitted]).

Further, contrary to defendant's assertion, Dietz did not stray beyond the permissible confines "of expert testimony explaining the common behaviors of victims of child sex abuse" (People v Jabaut, 111 AD3d 1140, 1145 [2013], lv denied 22 NY3d 1139 [2014]). Dietz testified that she had not met and did not know the victim, nor was she aware of the particular facts of this case or the underlying charges against defendant, and at no time did Dietz express any opinion as to either the victim's credibility or defendant's guilt (see id. at 1145; People v Gregory, 78 AD3d at 1247; People v Maggio, 70 AD3d at 1260-1261). Additionally, although some of the behaviors identified by Dietz were similar to those displayed by the victim in this case, Dietz nonetheless spoke of such behaviors in general terms (see People v LoMaglio, 124 AD3d at 1416), and nothing in the record suggests that "the prosecutor tailored the hypothetical questions [posed to Dietz] to include facts concerning the abuse that occurred in this particular case" (People v Williams, 20 NY3d at 584). Hence, no impermissible bolstering of the victim's testimony occurred. Under these circumstances, County Court did not abuse its discretion in permitting Dietz's testimony on the issue of CSAAS.[4]

Finally, we find no merit to defendant's claim that the sentence imposed was harsh and excessive. As noted previously, defendant's sentence was reduced by operation of law to an aggregate prison term of 50 years (see Penal Law § 70.30 [1] [e] [vi]) and, in light of the protracted and exploitive nature of defendant's crimes against the victim, "we find no abuse of discretion or extraordinary circumstances warranting a reduction of the sentence in the interest of justice" (People v Jabaut, 111 AD3d at 1148). Defendant's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

_____

[4] We note that County Court included an appropriate limiting instruction on this point in its final charge to the jury.

Garry, J.P., Lynch and Clark, JJ., concur.


ORDERED that the judgment is affirmed.




ENTER:

Robert D. Mayberger
Clerk of the Court