*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  June 11, 2015                    106321
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,
        v                                    MEMORANDUM AND ORDER

KRYSTIPHOR COX,
                        Appellant.
_____

Calendar Date:  April 30, 2015

Before:  Lahtinen, J.P., Garry, Egan Jr. and Rose, JJ.

_____

        Kindlon Shanks & Associates, Albany (Kathy Manley of counsel), for appellant.

        P. David Soares, District Attorney, Albany (Brittany L. Grome of counsel), for respondent.

_____

Garry, J.

        Appeal from a judgment of the Supreme Court (Ceresia, J.), rendered November 1, 2013 in Albany County, upon a verdict convicting defendant of the crimes of resisting arrest, strangulation in the second degree, aggravated criminal contempt and criminal contempt in the first degree (two counts).

        Defendant was charged with various crimes arising out of several incidents of alleged domestic violence involving two victims that took place between May 2011 and July 2012. Following a jury trial, he was convicted of resisting arrest, strangulation in the second degree, aggravated criminal contempt and criminal contempt in the first degree (two counts) and sentenced to an aggregate prison term of 4½ years, to be followed

by two years of postrelease supervision.  Defendant appeals.

Initially, defendant contends that his convictions for resisting arrest and strangulation in the second degree were against the weight of the evidence (see People v Bleakley, 69 NY2d 490, 495 [1987]).  To convict defendant of resisting arrest, the People were required to prove that "he intentionally prevent[ed] or attempt[ed] to prevent a police officer . . . from effecting an authorized arrest of himself" (Penal Law § 205.30 [emphasis added]).  Defendant contends that his conviction on this charge is necessarily against the weight of the evidence because his arrest was not based on probable cause and, therefore, was not authorized (see People v Peacock, 68 NY2d 675, 676-677 [1986]).

The arresting police officer testified that, in July 2012, he saw victim A "storm[]" out of a bar followed by defendant, who was "scream[ing] at the top of his lungs."  As the victim walked rapidly away, defendant pursued her and then reached out and touched her, and she flinched away.  The arresting officer had immediately recognized defendant and victim A because he had responded to a domestic altercation at their residence several months earlier.  The officer intervened by placing his hand on defendant's arm and saying, "[W]hoa, relax."  Defendant turned, swore at the officer and pushed him, whereupon the officer threw defendant on the ground and told him that he was under arrest.  A struggle ensued in which defendant refused the officer's instructions to place his hands behind his back and attempted to tuck his knees under himself and to roll on his side.  Another police officer who assisted in the arrest stated that defendant pushed the arresting officer and refused to comply with several commands to put his hands behind his back, and an eyewitness stated that defendant "grabbed" victim A, "lunged" at the arresting officer when he was told to stop and continued to struggle with both officers until they brought him to his feet and put him into a police vehicle.

"Probable cause does not require proof beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been committed by the person being arrested" (People v Williams, 89 AD3d 1222, 1223-1224 [2011], lv

denied 18 NY3d 887 [2012] [internal quotation marks, ellipsis and citation omitted]). The arresting officer testified that he was aware that an order of protection had been issued after the previous incident and, given the parties' behavior, was concerned that another incident of domestic violence might be occurring or about to occur. The officer did not intend to arrest defendant when he placed his hand on defendant's arm, but rather was seeking to calm defendant and speak with both parties to determine what was happening. Only when defendant pushed the arresting officer and swore at him did the officer place him under arrest. Given the officer's familiarity with the parties, defendant's belligerent behavior and his violent reaction to the officer's intervention, the officer had reasonable grounds "to believe that defendant was committing, had committed or was about to commit [the] offense[s]" of criminal contempt in the first or second degree and obstructing governmental administration in the second degree (People v Peacock, 68 NY2d at 677; see Penal Law §§ 195.05, 215.50 [6]; 215.51 [b] [v]).[1] Defendant raises no other challenge to the weight of the evidence supporting this conviction and, upon our independent review, we find no reason to disturb it (see People v Baltes, 75 AD3d 656, 659-660 [2010], lv denied 15 NY3d 918 [2010]).

Defendant's conviction for strangulation in the second degree arose from a July 2012 altercation in which defendant pushed victim A down and choked her with both hands while threatening to kill her. The victim testified that the choking lasted a couple of seconds but "felt like forever" and that, during this time, she was unable to breathe, "was seeing those stars" and was "going in and out." A police officer who was called to the scene saw red marks on the victim's neck. An acquaintance of the victim testified that she saw bruising on the side and front of the victim's neck several days after the incident. A physician's assistant who treated the victim at the hospital stated that her neck was tender when touched, that the victim described the level of her neck pain as 7 out of 10, and

---

[1]  Defendant was subsequently charged with criminal contempt in the first degree based upon this incident, but was ultimately acquitted of this charge.

that she had difficulty in swallowing, which interfered with her ability to eat and drink. The physician's assistant prescribed pain medication and a medicinal mouthwash to assist the victim in swallowing. The victim testified that she was unable to swallow solid food for about a week. We reject defendant's argument that this evidence does not demonstrate that the victim suffered the requisite "stupor, loss of consciousness for any period of time, or any other physical injury or impairment" (Penal Law § 121.12). Although the victim did not lose consciousness, the undisputed testimony regarding her need for medical treatment, significant neck pain, visible redness and bruising, and difficulty in swallowing that persisted for a week constituted the requisite physical injury (see People v Peterson, 118 AD3d 1151, 1154-1155 [2014], lvs denied 24 NY3d 1087 [2014]; People v Carte, 113 AD3d 191, 194 [2013], lv denied 23 NY3d 1035 [2014]). Thus, we find that the verdict on the strangulation charge was not against the weight of the evidence (see People v Parker, 127 AD3d 1425, 1427 [2015]).

Next, we find no merit in defendant's challenge to Supreme Court's Molineux ruling permitting the People to introduce evidence of defendant's prior bad acts. Evidence of uncharged crimes is inadmissible to show a defendant's criminal propensity or bad character, but may be admissible to show, among other things, intent or motive, if the probative value of the evidence outweighs the potential for prejudice (see People v Morris, 21 NY3d 588, 594 [2013]; People v Alvino, 71 NY2d 233, 241-242 [1987]). "[P]rior bad acts in domestic violence situations are more likely to be considered relevant and probative evidence because the aggression and bad acts are focused on one particular person, demonstrating the defendant's intent [and] motive" (People v Pham, 118 AD3d 1159, 1161 [2014], lv denied 24 NY3d 1087 [2014] [internal quotation marks and citations omitted]).

Here, the People sought permission to introduce evidence of nine previous bad acts. Supreme Court granted the application as to three of these incidents but, at trial, the People admitted evidence of only two bad acts. The People sought to introduce evidence that, in March 2012, defendant became angry with victim A for allegedly flirting with other men in a bar and he was kicked out of the bar for arguing with one of these men.

Outside, he was confronted by several men who heard him insulting victim A, and a fight took place in which his jaw was broken. Defendant was visibly upset with victim A and returned alone to their shared apartment, without obtaining medical treatment. He was charged with criminal mischief in the fourth degree and assault in the third degree for events that occurred later that night, in which he allegedly destroyed property that belonged to victim A and violently attacked her when she returned to the apartment. Evidence of the events leading up to these crimes was relevant to provide background information and to explain defendant's motive for attacking victim A and destroying her property (see People v Callicut, 101 AD3d 1256, 1258 n 1 [2012], lvs denied 20 NY3d 1096, 1097 [2013]; People v Mullings, 23 AD3d 756, 758 [2005], lvs denied 6 NY3d 756, 759 [2005]; People v Poquee, 9 AD3d 781, 781 [2004], lv denied 3 NY3d 741 [2004]).

As to victim B, Supreme Court allowed evidence relative to a March 2011 altercation in which defendant allegedly punched her in the eye and strangled her. One of the indictment counts charged defendant with criminal mischief in the third degree for slashing the tires of victim B's vehicle in May 2011. Evidence of the March 2011 incident was relevant to this charge on the issue of motive, as it provided the jury with background information on the nature of defendant's relationship with victim B and tended to establish his hostility towards her (see People v Dorm, 12 NY3d 16, 19 [2009]; People v Burkett, 101 AD3d 1468, 1471 [2012], lv denied 20 NY3d 1096 [2013]). The court properly balanced the probative value of both incidents against their prejudicial effect (see People v Burkett, 101 AD3d at 1471; People v Thibeault, 73 AD3d 1237, 1241 [2010], lv denied 15 NY3d 810 [2010], cert denied 562 US ___, 131 S Ct 1691 [2011]; compare People v Elmy, 117 AD3d 1183, 1186-1187 [2014]).

Defendant failed to make an objection during trial to preserve his contention that part of the testimony of victim B violated the Molineux ruling (see People v Malak, 117 AD3d 1170, 1175 [2014], lv denied 24 NY3d 1086 [2014]). In any event, we would have found no merit in the claim. Victim B testified that she and defendant had an argument just before the alleged tire-slashing incident, and that she began to drive away from defendant but returned when he threatened to transmit nude

pictures of her to other people.  Supreme Court had precluded evidence that defendant did, in fact, send nude pictures of the victim to friends, but this ruling did not preclude evidence that he threatened to do so.  We agree with the court that the testimony was necessary to explain to the jury why victim B returned to the scene.

We reject defendant's claim that his counsel was ineffective in failing to move for a severance of the nine indictment counts involving victim A – one of which charged defendant with criminal mischief in the fourth degree – from the single charge of criminal mischief in the third degree involving victim B.  The charges were properly joined as they "[were] defined by the same or similar statutory provisions" (CPL 200.20 [2] [c]), and defendant has neither shown that a motion for a discretionary severance would have succeeded nor that he suffered any prejudice from the lack of severance (see People v Ruger, 288 AD2d 686, 687 [2001], lvs denied 97 NY2d 728, 733 [2002]; see generally People v Caban, 5 NY3d 143, 152 [2005]).  Notably, defendant was acquitted of the charge involving victim B, as well as several of the charges involving victim A, "thus demonstrating that the jury was able to separately consider the proof with respect to each offense" (People v Raucci, 109 AD3d 109, 118 [2013], lv denied 22 NY3d 1158 [2014]).

The failure of defendant's counsel to respond in writing to the People's Molineux application does not, without more, rise to the level of ineffective assistance.  As for counsel's failure to object to certain comments during the People's summation, most of the allegedly improper remarks constituted fair comments on the evidence or fair responses to the defense summation (see People v Head, 90 AD3d 1157, 1158 [2011]).  Supreme Court appropriately handled one remark by striking it from the record and issuing a curative instruction, and the remaining two isolated comments were not so prejudicial as to deprive defendant of a fair trial or "to render counsel's failure to object to them evidence of ineffective assistance of counsel" (People v Albanese, 38 AD3d 1015, 1019 [2007], lv denied 8 NY3d 981 [2007]; accord People v Rowe, 105 AD3d 1088, 1091 [2013], lv denied 21 NY3d 1019 [2013]).  Defendant was not deprived of effective assistance by his counsel's failure to impeach witnesses for minor and immaterial

inconsistencies in their testimony (see People v Izzo, 104 AD3d 964, 967 [2013], lv denied 21 NY3d 1005 [2013]), nor do we find any failures "ris[ing] to such an egregious level as to deprive defendant of meaningful representation" in defendant's remaining claims (People v Cade, 110 AD3d 1238, 1242 n 3 [2013], lv denied 22 NY3d 1155 [2014] [internal quotation marks and citation omitted]).  Defense counsel made appropriate opening and closing statements, effectively cross-examined the People's witnesses, successfully moved to dismiss one of the indictment counts and obtained acquittals on four of the remaining counts (see People v Roach, 119 AD3d 1070, 1072-1073 [2014], lv denied 24 NY3d 1221 [2015]).

Lahtinen, J.P., Egan Jr. and Rose, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court