People v Goff (2024 NY Slip Op 00656)

People v Goff

2024 NY Slip Op 00656

Decided on February 8, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 8, 2024

113425
[*1]The People of the State of New York, Respondent,
v
Robert J. Goff, Appellant.

Calendar Date:December 13, 2023

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, McShan and Mackey, JJ.

Law Office of James E. Tyner, PLLC, Latham (Kathy Manley of counsel), for appellant.
Kristy L. Sprague, District Attorney, Elizabethtown (Kevin P. Mallery of counsel), for respondent.

Mackey, J.
Appeal from a judgment of the County Court of Essex County (Richard B. Meyer, J.), rendered January 10, 2022, convicting defendant of the crimes of course of sexual conduct against a child in the second degree and endangering the welfare of a child.
In September 2020, defendant was charged in a six-count indictment with two counts of course of sexual conduct against a child in the second degree (see Penal Law § 130.80 [1] [a]), three counts of endangering the welfare of a child (see Penal Law § 260.10 [1]) and sexual abuse in the first degree (see Penal Law § 130.65 [3]). These charges stemmed from a statement allegedly made to the victim's mother by the victim's younger brother in December 2019, to the effect that defendant had stuck his finger into the victim's rectum. The State Police investigated and defendant, after waiving his Miranda rights, agreed to speak with police without counsel. Defendant denied the allegations or that he ever touched the victim in a sexual way.
At trial, defendant moved for a directed verdict on all counts. County Court granted the motion on all but one count of course of sexual conduct against a child, between the dates of December 2018 and May 2019, and one count of endangering the welfare of a child for the same time frame. Defendant was convicted of these remaining charges and was sentenced to concurrent prison terms of six years for course of sexual conduct against a child and one year of incarceration for endangering the welfare of a child. Defendant appeals.
Focusing largely on the victim's credibility, defendant's first contention is that his convictions are against the weight of the evidence. "In conducting a weight of the evidence review, we view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v McCoy, 169 AD3d 1260, 1261-1262 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 1033 [2019]).
Although a different outcome would not have been unreasonable here, our review of the record confirms that the verdict is not against the weight of the evidence. The victim (born in 2010) testified that during the time he and his family resided at defendant's home he often slept with defendant, who would stick his finger into the victim's rectum "almost every night." He recounted that defendant used his index finger to penetrate him and that he sometimes tried to stop defendant by pushing his hand away. The victim's mother testified that she and her three sons, including the then eight-year-old victim, moved into defendant's home sometime in December 2018 and moved out in May 2019. Although defendant denied sexual contact with the victim, he admitted that the victim and his family lived [*2]with him during that time frame and that the victim (and his brothers) would sometimes sleep in his bed, with their mother's knowledge and consent. He testified that this first occurred on March 8, 2019, when he came home from work to find the three boys asleep in his bed after their mother had dismantled their own bed while rearranging a room for herself. He agreed that this happened from time-to-time until the boys and their mother moved out in May. Notwithstanding certain inconsistencies brought out on the victim's cross-examination, including the time frame for the abuse, the jury apparently credited his testimony and found defendant guilty. Viewing the evidence in a neutral light, and deferring to the jury's resolution of the credibility issues (see People v Van Alphen, 167 AD3d 1076, 1078 [3d Dept 2018], lv denied 32 NY3d 1210 [2019]), we find that defendant's convictions for course of sexual conduct against a child in the second degree (see Penal Law § 130.80 [1] [a]) and endangering the welfare of a child (see Penal Law § 260.10 [1]) are supported by the weight of the evidence.
We agree with defendant, however, that County Court erred in how it responded to a jury note seeking clarification on the charge of course of sexual conduct against a child in the second degree. Although that argument is unpreserved, we agree with defendant that this Court should address the issue and take corrective action in the interest of justice.
Upon a jury's request for more information, the trial court "must give such requested information or instruction as the court deems proper" (CPL 310.30). "Although the court may exercise some discretion in fashioning a response, the response must be meaningful" (People v Wilson, 90 AD3d 1155, 1156 [3d Dept 2011] [citations omitted], lv denied 18 NY3d 963 [2012]). "The adequacy of the trial court's response is gauged by the form of the jury question, the particular issue of which inquiry is made, the supplemental instruction actually given, and the prejudice (if any) to the defendant" (People v Steinberg, 79 NY2d 673, 684 [1992] [citations omitted]). "Simple reiteration of an original instruction may, under appropriate circumstances, constitute a meaningful response sufficient to satisfy the statutory mandate" (People v Santi, 3 NY3d 234, 248 [2004] [citation omitted]). "However, where the court fails to give information requested, upon a vital point, a failure to respond may constitute error. The error is not so much that an instruction is inadequate in some legal respect, but that the jury, misled by or not comprehending the original charge, remains perplexed about the elements of the crime or the application of the law to the facts" (People v Telesford, 149 AD3d 170, 177 [1st Dept 2017]).
Here, County Court received a note from the jury that stated, "[w]e are confused about the three month timeframe. Just to be clear, if the [d]efendant stuck his finger up the victim's butt three times between March 5 and May 5 and [*3]no time before or after, he would not be guilty? We want to make sure we understand this correctly." The correct answer to that question was quite simple — the defendant would not be guilty in the situation posited by the jury, because an element of the crime of course of sexual conduct against a child in the second degree is that the conduct take place "over a period of time not less than three months in duration" (Penal Law § 130.80 [1]). Upon receiving the note, County Court consulted with both parties as to how to proceed. Because they could not agree, however, it simply reread the original instruction about which the jury was expressing confusion. Significantly, the jury had already been provided with a complete written copy of the court's original instructions for its reference during deliberations. Under these circumstances, County Court's response to the jury's inquiry was not meaningful, as it did nothing to clarify the very specific point on which the jury was confused. "[I]n our view, this is one of those rare cases where interest of justice review is warranted. Where the court fails to give information requested upon a vital point no appellate court may disregard the error" (People v Telesford, 149 AD3d at 182-183 [internal quotation marks, brackets and citation omitted]). We find that the court's inadequate supplemental instruction, under the circumstances presented here, deprived defendant of a fair trial.
We also agree with defendant that County Court erred in allowing Tara Benincasa to testify concerning child sexual abuse accommodation syndrome (CSAAS), without first determining that she was an expert in that field. Benincasa testified that she is a licensed mental health counselor with a master's degree and has significant experience in counseling victims of child sexual abuse. After hearing her qualifications, County Court told the jury that "[t]he determination of whether someone is an expert or not is a factual question. And as you know, the jury decides all factual questions. So it will be up to you to evaluate her credentials and determine whether or not you believe that she is an expert in whatever field she's going to be testifying about." When defendant's counsel later objected to Benincasa testifying to opinions because she had not been "established as an expert," the court responded, "[w]ell, the jury has enough information before them, I believe, to make that determination of whether or not she's an expert."
Although "[t]he court is not required to explicitly declare a witness an expert before permitting [expert] testimony" (People v Andrade, 172 AD3d 1547, 1552 [3d Dept 2019] [internal quotation marks and citation omitted], lv denied 34 NY3d 928 [2019]), "the trial court is vested with the initial responsibility of evaluating whether an expert possesses the requisite skill, training, education, knowledge or experience from which it can be assumed that the information imparted or the opinion rendered is reliable" (People [*4]v Brown, 128 AD3d 1183, 1188 [3d Dept 2015] [internal quotation marks and citations omitted]), lv denied 27 NY3d 993 [2016]). Here, County Court abdicated its responsibility to make the initial determination as to whether Benincasa qualified as an expert. Moreover, even if it were assumed that Benincasa is an expert concerning CSAAS, her testimony in that regard should have been limited to "educat[ing] the jury on a scientifically-recognized pattern of secrecy, helplessness, entrapment [and] accommodation experienced by the child victim . . . [and] assisting the jury to understand why a child may wait a long time before reporting the alleged abuse" (People v Nicholson, 26 NY3d 813, 828 [2016] [internal quotation marks and citations omitted]). She went beyond that scope, however, and was impermissibly allowed to "explain[ ] 'grooming' and other behaviors associated with perpetrators of child sexual abuse" (People v Ruiz, 159 AD3d 1375, 1376 [4th Dept 2018]). For these reasons, we conclude that defendant's convictions must be reversed and a new trial held.
Garry, P.J., Reynolds Fitzgerald and McShan, JJ., concur.
Lynch, J. (dissenting).
I respectfully dissent. To begin, I agree with the majority that the verdict is not against the weight of the evidence. With respect to the jury note, I also agree with the majority that the answer to the jury's astute question "was quite simple" and the better practice would have been for County Court to affirmatively confirm for the jury that defendant could not be found guilty if his conduct only occurred during a two-month period. Even so, I do not agree that the court failed to provide a meaningful response by re-reading the charge, which expressly requires the temporal period to exceed three months (see Penal Law § 130.80 [1]). The court specifically clarified the temporal element of the charge under the specific facts presented, instructing that it was the People's burden to prove beyond a reasonable doubt that defendant engaged in two or more acts of sexual conduct with the victim over a period of not less than three months between December 2018 and May 2019. Importantly, defendant failed to object to the court's proposed response and, in fact, approved of its re-reading of the charge.[FN1] As such, the asserted error has not been preserved for our review (see People v Mack, 27 NY3d 534, 537 [2015]). The court further reminded the jury that a written copy of the charge had been provided with the exhibits, which the jury could refer to as their deliberations continued, and advised that if there were "any further requests regarding the charge, [the jury could] certainly send . . . another note." The jury did not do so on this issue (compare People v Telesford, 149 AD3d 170, 181 [1st Dept 2017] [court failed to meaningfully respond to a jury's four successive notes on the same issue]), but did request a timeline from the mother's testimony as to "when she moved in, when she had the nightmare, when the boys moved [*5]in and what date the boys started sleeping in [defendant's] bed." Both parties agreed to the court's proposal to read back certain responsive portions from the mother's testimony while advising that her testimony did not "have . . . specific dates for any of the questions . . . asked." From my perspective, the jury's focus on a relevant timeline after the court's explanation of the charge reflects an understanding of the temporal element, not confusion. As such, on this record, I do not agree that any corrective action in the interest of justice is warranted.
With respect to the testimony of Tara Benincasa concerning child sexual abuse accommodation syndrome (hereinafter CSAAS), it is my view that County Court did not abuse its discretion in allowing her to provide expert opinion testimony in this regard. This witness testified that she is a licensed mental health counselor, works as a "trauma specialist" and has extensive experience in the field of child sexual abuse. I am mindful that, in the first instance, the trial court bears the responsibility for determining whether a proposed expert witness has the qualifications to render opinion testimony (see People v Munroe, 307 AD2d 588, 591 [3d Dept 2003], lv denied 100 NY2d 644 [2003]). In doing so, however, County Court "was not required to declare or certify on the record that [Benincasa] was an expert before permitting her to testify" (People v Tetro, 175 AD3d 1784, 1787 [4th Dept 2019] [internal quotation marks, brackets and citation omitted]; accord People v Gilbert, 199 AD3d 1048, 1057 [3d Dept 2021]; see People v Andrade, 172 AD3d 1547, 1552 [3d Dept 2019], lv denied 34 NY3d 928 [2019]). When defense counsel objected to Benincasa's qualifications, County Court overruled the objection and explained that "the jury ha[d] enough information before [it] . . . to make th[e] determination of whether or not she[ is] an expert." In so ruling, the court did not abdicate its responsibility. Rather, by concluding that the jury "ha[d] enough information before [it]" to determine whether this witness was an expert, the court implicitly deemed the witness qualified to give expert opinion testimony (see People v Gilbert, 199 AD3d at 1058; People v Tetro, 175 AD3d at 1787). County Court also properly instructed the jury on evaluating expert testimony (see People v Grajales, 294 AD2d 657, 659 [3d Dept 2002], lv denied 98 NY2d 697 [2002]), and limited Benincasa's testimony to CSAAS generally, which was particularly appropriate given that the witness was not provided with any information specific to this case and had not interviewed the victim. In turn, County Court duly instructed the jury that Benincasa's testimony was not offered as proof of the crimes charged but to assist the jury in evaluating the victim's behavior (see People v Nicholson, 26 NY3d 813, 827-828 [2016]). With respect to Benincasa's limited testimony as to "grooming," there was no objection, leaving the issue unpreserved. Moreover, the testimony [*6]generally related to the child's pattern of behavior, in what the witness described as the "engagement phase." As such, this limited testimony did not deprive defendant of a fair trial (see People v Williams, 20 NY3d 579, 584 [2013]; People v Slaughter, 207 AD3d 1185, 1186 [4th Dept 2022], lv denied 39 NY3d 964 [2022]; cf People v Ruiz, 159 AD3d 1375, 1376-1377 [4th Dept 2018]), and the judgment of conviction should be affirmed.
ORDERED that the judgment is reversed, as a matter of discretion in the interest of justice, and matter remitted to the County Court of Essex County for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: The record reflects no disagreement between counsel as to how County Court should proceed in this regard. It was the court that initially and erroneously explained that "absent some agreement by counsel . . . , [it] c[ould] only read back that portion of the charge that sets forth [the elements of the crime]." When asked if counsel disagreed, both attorneys responded "[n]o." A court, however, is not so limited and, after affording counsel an opportunity to comment on a jury's note, "must give such . . . instruction as the court deems proper" (CPL 310.30 [emphasis added]). In other words, whether counsel can agree or not, it is the court's responsibility to provide a meaningful response (see People v Malloy, 55 NY2d 296, 301-302 [1982], cert denied 459 US 847 [1982]).