People v Daniels (2026 NY Slip Op 01248)

People v Daniels

2026 NY Slip Op 01248

Decided on March 5, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 5, 2026

CR-23-2414
[*1]The People of the State of New York, Respondent,
vPerry Daniels, Appellant.

Calendar Date:January 7, 2026

Before:Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and Fisher, JJ.

Paul J. Connolly, Delmar, for appellant.
Christopher Liberati-Conant, District Attorney, Hudson (Kathleen Anderson of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Columbia County (Jonathan Nichols, J.), rendered May 22, 2023, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree.
On April 1, 2021, a confidential informant (hereinafter CI) informed the Hudson Police Department that defendant was selling drugs out of an apartment located at a specified address on Columbia Street in the City of Hudson, Columbia County. The next day, the CI appeared at the police department alleging that defendant was presently at the apartment and was in possession of both cocaine and a handgun. Members of the local and state police immediately began surveilling the apartment. Law enforcement observed defendant leave the apartment, engage in a hand-to-hand exchange with a person in a vehicle and eventually board a bus. Thereafter, law enforcement stopped the bus and, after performing a pat-down frisk of defendant, discovered a vial containing nine individually wrapped packets of crack cocaine (hereinafter tie-off bags)[FN1] along with a razor blade, a larger chunk of crack cocaine and over $1,600 in cash. In February 2022, defendant was charged by indictment with criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree. Defendant moved to suppress the evidence seized; that motion was denied by County Court. Following a jury trial, defendant was convicted as charged. Defendant was sentenced, as a second felony offender, to a prison term of 12 years, to be followed by three years of postrelease supervision, for his conviction of criminal possession of a controlled substance in the third degree and a lesser concurrent term of incarceration on the remaining conviction. Defendant appeals.
Defendant contends that the verdict is against the weight of the evidence because the contents of the tie-offs bags were never analyzed to determine if they contained cocaine. When undertaking a weight of the evidence analysis, "we view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Alvarez, 238 AD3d 1266, 1267 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied 44 NY3d 981 [2025]; see People v Patterson, 199 AD3d 1072, 1074 [3d Dept 2021]), lv denied 37 NY3d 1163 [2022].As relevant here, "[a] person is guilty of criminal possession of a controlled substance in the third degree when he [or she] knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it" (Penal Law § 220.16 [1]). "A person is guilty of criminal possession of a controlled substance in [*2]the fourth degree when he [or she] knowingly and unlawfully possesses . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-eighth ounce or more" (Penal Law § 220.09 [1]).
At trial, the People presented the testimony of several law enforcement officers who were involved in the investigation of drug trafficking at the address on Columbia Street. According to the testimonial evidence, a CI provided information that defendant was at the apartment and in possession of cocaine and a handgun. Shortly thereafter, a surveillance team was posted to watch the apartment. A detective testified that he saw defendant exit the apartment and radioed the other team members that defendant was headed their way. The other team members testified that they observed defendant walking down the street, engage in a hand-to-hand exchange with an unidentified third party and then board a bus. The officers stopped the bus and performed a pat-frisk of defendant finding a vial containing nine tie-off bags and a razor blade, a larger chunk of cocaine and $1,621. The officers further testified that based on their training and experience as narcotics investigators, a razor blade is used to chop off smaller pieces from a large chunk of cocaine, that these smaller pieces are put into tie-off bags to be sold to individual users and a large sum of cash represents money from the sale of the tie-off bags. The officers also testified that the difference between a user of drugs and a seller of drugs is that a user will typically have drug paraphernalia on their person and defendant did not possess any drug paraphernalia. A State Police forensic scientist confirmed that she received the tie-off bags and a larger chunk substance and conducted testing of the larger chunk, concluding that it contained cocaine, which is a narcotic drug. The forensic scientist also testified that the weight of the larger chunk was 4.776 grams, which weighed more than one-eighth of an ounce. She testified that she did not test the material in the tie-off bags because it is the lab's policy to only test the substance related to the highest charge and the cumulative weight of material found in the tie-off bags would not have elevated the charge.
Although a contrary verdict would not have been unreasonable, when evaluating the evidence in a neutral light and according deference to the jury's credibility determinations, we find the jury's verdict is supported by the record and are unpersuaded by defendant's contention that the verdict is against the weight of the evidence. The forensic scientist's testimony that the larger chunk contained cocaine, weighed 4.776 grams and is more than one-eighth of an ounce supports the conviction of criminal possession of a controlled substance in the fourth degree (see People v Paul, 202 AD3d 1203, 1207-1208 [3d Dept 2022], lv denied 38 NY3d 1034 [2022[*3]]; People v Nelson, 156 AD3d 1112, 1116 [3d Dept 2017], lv denied 31 NY3d 1151 [2018]). Although the contents of the tie-off bags were not subject to lab testing, "the failure to conduct a lab test does not automatically result in a reversal of the charges when conducting a weight of the evidence review" (People v Flynn, 233 AD3d 1087, 1090 [3d Dept 2024], lv denied 44 NY3d 982 [2025]). The jury could reasonably infer that the contents of the tie-off bags, which were seized at the same time as the larger chunk, also contained cocaine (see id.; People v Gillyard, 70 AD3d 854, 855 [2d Dept 2010], lv denied 14 NY3d 840 [2010]). The jury could also infer defendant's intent to sell from the two different quantities seized, together with the razor blade and large sum of cash; thus, the evidence supports the conviction of criminal possession of a controlled substance in the third degree (see People v Flynn, 233 AD3d at 1090-1091; People v Hayward, 213 AD3d 989, 992 [3d Dept 2023], affd 42 NY3d 753 [2024]).
Defendant challenges the denial of his suppression motion, asserting that the police did not have probable cause to stop and detain him and that the warrantless search of his clothing was improper. We disagree. Police may legally stop a vehicle and conduct a warrantless search of a defendant's person and possessions incident to a lawful arrest. "[A] lawful arrest is one that is supported by probable cause" (People v Drayton, 189 AD3d 1888, 1890 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 36 NY3d 1119 [2021]; see People v Cooper, 196 AD3d 855, 856 [3d Dept 2021], lv denied 37 NY3d 1160 [2022]). "Probable cause exists when an officer has knowledge of facts and circumstances sufficient to support a reasonable belief that an offense has been or is being committed" (People v Drayton, 189 AD3d at 1890 [internal quotation marks and citations omitted]; accord People v Zirpola, 171 AD3d 1245, 1247 [3d Dept 2019], lv denied 34 NY3d 1164 [2020]). "[I]nformation given to the police by a [CI] may provide reasonable suspicion or probable cause if the People demonstrate the [CI]'s reliability and the basis of his or her knowledge" (People v Clark, 153 AD3d 1093, 1094 [3d Dept 2017] [internal quotation marks and citations omitted], lv denied 30 NY3d 979 [2017]; see People v Darby, 206 AD3d 1165, 1167 [3d Dept 2022], lv denied 38 NY3d 1149 [2022]). Adequate indicia of reliability may include that the CI has previously provided the police with accurate information or that the CI has provided details of events that are confirmed by police observation (see People v Pettigrew, 161 AD3d 1306, 1308 [3d Dept 2018], lv denied 32 NY3d 940 [2018]; People v Wolfe, 103 AD3d 1031, 1033-1034 [3d Dept 2013], lv denied 21 NY3d 1021 [2013]).
At the suppression hearing, a State Police detective testified that on April 1, 2021, the CI provided information that defendant was selling crack cocaine in the area of the specified address on Columbia Street. This [*4]information was based on the CI's prior purchases of crack cocaine from defendant. The detective also testified that the CI stated that defendant was a regular passenger on a specific bus — known colloquially as the "five-dollar bus" — which runs between the City of Albany and the City of Hudson. The detective further testified that the CI had been involved in several controlled buys [FN2] in 2020 that resulted in the seizure of a substantial quantity of narcotics. A detective sergeant with the Hudson Police Department testified that the CI provided information that defendant was at the address on Columbia Street and in possession of crack cocaine and a handgun. The basis of the CI's knowledge was direct knowledge as he was at the apartment and saw the drugs and handgun. The detective sergeant testified that within approximately one hour from receiving the CI's information, he contacted the State Police and set up surveillance at the address on Columbia Street. The detective sergeant confirmed that the previous use of the CI in controlled buys was successful and resulted in search warrants yielding narcotics. An investigator with the State Police Violent Gang Narcotics Enforcement Team testified that the surveillance team was provided with a description of defendant, including what he was wearing, and he was assigned to surveil on Warren and 1st Street. Defendant, who was surveilled the entire time, left the apartment, walked toward him and boarded a bus. The investigator testified that the bus was stopped, defendant was directed to exit the bus, his backpack was removed and he was detained. In view of the evidence, and crediting County Court's credibility determinations, the CI was proven reliable based on the past information he provided to the police, that his information was based on direct knowledge and the information regarding defendant's presence at the apartment and his use of public bus transportation was confirmed by police observation. Thus, County Court did not err in finding that probable cause existed for the stop and warrantless arrest of defendant (see People v Drayton, 189 AD3d at 1890; People v Clark, 153 AD3d at 1095).
As to defendant's contention that the search of his clothing was infirm, "in order to justify a frisk of a suspect's outer clothing, a police officer must have knowledge of some fact or circumstance that supports a reasonable suspicion that the suspect is armed or poses a threat to safety. In conducting our review, great weight is accorded to the trial court's determination at a suppression hearing and, absent a basis in the record for finding that the court's resolution of credibility issues was clearly erroneous, its determinations are generally not disturbed" (People v Graham, 233 AD3d 1361, 1366-1367 [3d Dept 2024] [internal quotation marks, brackets and citations omitted], lv denied 43 NY3d 944 [2025]; see People v Weigand, 224 AD3d 1164, 1165 [3d Dept 2024]). As previously noted, the investigator testified that [*5]he was part of the surveillance team and, at the time he frisked defendant, was aware that the CI informed the police that defendant was in possession of drugs and a handgun. The investigator testified that when he frisked defendant, he felt a hard cylindrical object in his pocket and was unsure whether it was the barrel of a gun. Without reaching into defendant's pocket, he manipulated the cylinder to the top of the pocket where he observed it was a vial containing cocaine. Granting due deference to County Court's credibility determinations and viewing the record as a whole, the court properly denied defendant's motion to suppress the evidence (see People v Weigand, 224 AD3d at 1166; People v Graham, 233 AD3d at 1367).
We also reject defendant's contention that County Court committed reversible error by failing to conduct both steps of the Molineux analysis and thus prejudicing defendant in allowing the People to introduce evidence of defendant's prior convictions of drug-related crimes in its case-in-chief. "It is well settled that the Molineux rule requires that evidence of a defendant's prior bad acts or crimes be excluded unless it is probative of a material issue other than criminal propensity and its probative value outweighs the risk of prejudice to the defendant. However, such evidence may be admitted if it falls within the recognized Molineux exceptions — motive, intent, absence of mistake, common plan or scheme and identity — or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative" (People v Perulli, 217 AD3d 1133, 1136 [3d Dept 2023] [internal quotation marks, brackets and citations omitted], lv denied 40 NY3d 1081 [2023]; see People v Gannon, 174 AD3d 1054, 1058 [3d Dept 2019], lv denied 34 NY3d 980 [2019]).
Prior to trial, the People moved to permit the introduction of a 2003 conviction for possession and a 2019 conviction for attempted criminal possession of a narcotic drug in the third degree for purposes of showing intent and motive. County Court ultimately found that although the 2003 conviction was temporally attenuated, the probative value of the evidence outweighed its prejudicial effect, allowed the People to use both convictions and indicated it would provide appropriate limiting instructions. While County Court's ruling did not explicitly describe the requisite balancing test on the record, it includes defense counsel's objections and reflects that the court was aware of its obligation to balance the prejudicial effect and probative value of the convictions (see People v Pigford, 148 AD3d 1299, 1302 [3d Dept 2017], lv denied 29 NY3d 1085 [2017]; People v Brown, 128 AD3d 1183, 1186 [3d Dept 2015], lv denied 27 NY3d 993 [2016]). The People and defendant subsequently stipulated that only the certificate of conviction for the 2019 conviction would be presented to the jury. County Court gave timely and appropriate limiting instructions regarding the [*6]proper use of the conviction at the time the evidence was received and when the final instructions were given to the jury, thereby limiting any prejudicial impact (see People v Kendricks, 226 AD3d 1150, 1156 [3d Dept 2024], lv denied 41 NY3d 1003 [2024]; People v Hebert, 218 AD3d 1003, 1010 [3d Dept 2023], lv denied 40 NY3d 1080 [2023]).
Defendant's challenge to County Court's Sandoval ruling, which directed that the People would be permitted to cross-examine defendant, should he testify, on a 2019 conviction for attempted criminal possession of a controlled substance in the third degree, and for a 2018 conviction for criminal possession of a controlled substance in the seventh degree, is unavailing. The convictions were not remote in time and were probative of defendant's credibility and willingness to place his own interests above those of society. Furthermore, the court limited the prejudice by prohibiting inquiry into the facts and by its assurance that it would provide appropriate limiting instructions at the time of trial. Under these circumstances, we discern no abuse of discretion (see People v Bowes, 206 AD3d 1260, 1268 [3d Dept 2022]; People v Ruffin, 191 AD3d 1174, 1180 [3d Dept 2021], lv denied 37 NY3d 960 [2021]).
Defendant failed to preserve his argument that County Court should have precluded evidence that defendant was dealing drugs at the apartment, in the absence of a Molineux proffer or a request for a Ventimiglia hearing (see People v Byrd, 152 AD3d 984, 988-989 [3d Dept 2017]; People v Cox, 129 AD3d 1210, 1214 [3d Dept 2015], lv denied 26 NY3d 966 [2015]).
Next, defendant asserts that defense counsel rendered ineffective assistance at trial by allowing proof of uncharged crimes. "It is well established that a claim of ineffective assistance of counsel must fail if the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation. It is a defendant's burden to show that meaningful representation was not provided and, further, that there were no strategic or other legitimate explanations — i.e., those that would be consistent with the decisions of a reasonably competent attorney — for the alleged deficiencies of counsel" (People v Malloy, 228 AD3d 1068, 1071 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 971 [2024]; see People v Wilcox, 231 AD3d 1350, 1350-1351 [3d Dept 2024]). Specifically, defendant argues that counsel failed to object when two investigators testified that they viewed him engage in a hand-to-hand exchange with an unknown third person. This testimony was inextricably interwoven with defendant's charged crimes, each witness' narrative of events leading to defendant's arrest and is subject to the Molineux exceptions and counsel cannot be faulted when he fails to object or make a motion that has little or no chance of success (see People v Hooper, 238 AD3d [*7]1207, 1211 [3d Dept 2025]; People v Henley, 232 AD3d at 1121-1122). In further evaluating the totality of defense counsel's representation, he moved to suppress evidence, vigorously cross-examined the People's witnesses and made cogent opening and closing statements. Thus, we are satisfied that defendant received meaningful representation (see People v Hoyt, 237 AD3d 1360, 1363 [3d Dept 2025], lv denied 44 NY3d 982 [2025]; People v Henley, 232 AD3d at 1121-1122).
Finally, we reject defendant's request to modify his sentence in the interest of justice (see CPL 470.15 [3] [c]) considering his age and health. Despite the fact that the sentence is at the maximum of the permissible statutory range, defendant has a lengthy criminal history beginning when he was 15 years old, with a majority of the offenses being drug related. Accordingly, we do not find the sentence to be unduly harsh or severe under the circumstances (see CPL 470.15 [6] [b]; People v Crawford, 235 AD3d 1174, 1178-1179 [3d Dept 2025], lv denied 43 NY3d 1007 [2025]; People v Robinson, 217 AD3d 1269, 1269 [3d Dept 2023]).
Clark, J.P., Aarons, Pritzker and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: A tie-off bag is a clear piece of plastic, either cellophane or a plastic bag, that crack cocaine is put inside; it is then tied and ripped at the knot.

Footnote 2: A controlled buy is where the police use the CI to arrange for and purchase drugs from a dealer. The CI will meet with police prior to the buy, the police search the CI for contraband or drugs prior and subsequent to the pre-arranged buy, provide buy money to the CI and equip the CI with a recording or listening device.