================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 47
The People &c.,
          Respondent,
        v.
Reginald Powell,
          Appellant.




          Salvatore A. Gaetani, for appellant.
          Maria I. Wager, for respondent.










GARCIA, J.:

          In People v Primo, we rejected the notion "that

evidence of third-party culpability occupies a special or exotic

category of proof" requiring a heightened evidentiary standard

for admission (96 NY2d 351, 356 [2001]).  Instead, we clarified

- 1 -

that third-party culpability evidence should be evaluated in accordance with ordinary evidentiary principles by balancing the proffered evidence's probative value against its potential for undue prejudice, delay, and confusion.  Defendant Reginald Powell challenges the Primo standard as constitutionally deficient in light of the Supreme Court's subsequent ruling in Holmes v South Carolina (547 US 319 [2006]).  We now confirm that the standard set forth in Primo does not infringe upon a defendant's constitutional right to present a complete defense as set forth in the Sixth and Fourteenth Amendments.  Applying that standard here, we conclude that the trial court did not abuse its discretion by precluding defendant's ill-defined and speculative third-party culpability evidence.

Jennifer Katz was murdered on or about December 28, 2010.  The police discovered Katz's body in her bedroom closet; her hands were bound behind her back, fabric was tied around her neck, and she was wrapped in bedding.  She died from a single stab wound to the neck.

Defendant's brother, Warren Powell, was a sanitation worker and his collection route included Katz's house.  Warren and Katz had a prior relationship and cohabited in Katz's house for five or six years.  During that time, Katz purchased a $500,000 life insurance policy that named Warren as the beneficiary.  The couple separated in the spring of 2010, several months before Katz's death.  After their separation, Katz and

Warren remained on good terms.  Warren would on occasion use the entry code for the garage door to gain access to Katz's house.

On Warren's recommendation, Katz hired defendant to do gardening and other work.  On December 27, 2010, a witness saw defendant shoveling snow from Katz's driveway.  Katz was last seen the next day, December 28, at approximately 11:00 a.m. About forty minutes later, an unanswered one-minute phone call to Warren was made from Katz's phone.

On December 29, Warren and his coworker noticed that Katz had left her garbage cans at the curb from the day before and failed to leave any recyclables at the curb for collection. Warren and his coworker found this strange because Katz was meticulous about retrieving her empty garbage cans and placing recyclables out for collection.

The following evening, before police discovered the body, they stopped defendant, who was driving Katz's car, for a routine traffic violation.  Defendant fled on foot, but was apprehended after a short chase.  Women's jewelry was found in defendant's possession.  He told the police that he did not have a driver's license, that he lacked permission to use Katz's car, and that he was on parole.

Defendant made a number of voluntary statements to the police, including that he had discovered Katz's body in a closet in her home and that he feared he would be blamed for her murder because he was on parole.  He admitted that he fled the scene

after taking some of Katz's jewelry and her car.  Prior to his arrest, defendant had attempted to sell Katz's car for a fraction of its value.  Defendant initially denied that he had sexual intercourse with Katz, but later asserted that they had been intimate on prior occasions.  Although defendant admitted finding the body, he denied that he killed Katz.

The People presented forensic evidence that defendant's DNA was present on several pairs of men's underwear in the hamper in Katz's bedroom.  His DNA was also found in Katz's vagina and on her underwear, as well as on some bedding.  Defendant's DNA also matched DNA taken from Katz's right hand nail clipping.  Phone records demonstrated that defendant's phone was located in the area near Katz's house at certain times on December 25, 26, 27, 28, and 30.

On December 30, after the police arrived at Katz's house, Katz's friend called Warren to inform him of the police activity.  Warren called Katz and sent her a text message, but he did not go to the house.

Before trial, the People moved to preclude defendant from introducing evidence that Warren was the beneficiary of Katz's $500,000 life insurance policy and from mentioning the policy in his opening statement.  In response, defense counsel argued that Warren "may have a motive" and "may be a person of interest in the case."  He further argued that "other people" might also have had a motive to kill Katz.

The trial court granted the People's motion, concluding that defendant failed to reach the threshold to admit third-party culpability evidence. Stating that defendant could not "have it both ways," the court noted that "it is not clear that [defendant] is actually accusing [W]arren . . . of doing the murder. And that is an essential element of third-party culpability." The court left open the possibility that it could change this ruling "depending on how the evidence [was] presented throughout the trial" or if additional evidence came to light supporting the contention.

During trial, defense counsel repeatedly denied that he was attempting to prove third-party culpability, insisting that he was "not making an accusation yet," but "simply gathering the facts" "to lay a foundation, in case I do want to make that third-party accusation." The court reiterated to defense counsel that he must "make an offer of proof" demonstrating the "relevance and materiality" of any proffered third-party culpability evidence. The court further stated that the evidence could not be "speculative" or "misleading."

Nevertheless, defense counsel continued his attempt to "show that there is evidence in the case someone else could have killed [Katz]. Anyone else," while insisting he was "not trying to do third-party culpability." Defense counsel's ambivalent articulation of his strategy continued throughout the trial, during which he represented to the court that he was "not

accusing" Warren, implied that he might accuse defendant's girlfriend, and also proffered that "other people could have" committed the murder.

Warren testified at the trial, but the court limited defendant's cross-examination. On direct examination, Warren testified that Katz had asked him to move out of the house about six months before the murder, but defendant was precluded from exploring the reasons for the couple's separation. The court also limited inquiry into Warren's failure to check on Katz after he noticed that the empty trash cans had not been retrieved and into his reaction upon hearing of police activity at Katz's house. During cross-examination, Warren denied that he made a statement to his sister that he could never forgive defendant if it was true that defendant had engaged in a sexual relationship with Katz. The court prevented defendant from calling the sister as a witness to refute Warren's denial.

The jury found defendant guilty of murder in the first degree and several other crimes, and defendant was sentenced to life imprisonment without parole. On defendant's appeal, the Appellate Division affirmed (125 AD3d 1010 [2d Dept 2015]), holding that the trial court "properly precluded . . . defendant from presenting evidence of third-party culpability, since the proposed evidence was based on mere speculation" (id. at 1012). A Judge of this Court granted defendant leave to appeal (25 NY3d 1076 [2015]). We affirm.

On appeal, defendant argues that New York's standard for admitting third-party culpability evidence fails to adequately protect a defendant's constitutional right to present a complete defense. The main thrust of defendant's argument at trial was that the proffered third-party culpability evidence was admissible under the Primo standard, not that the standard was unconstitutional. Nevertheless, defendant presented his constitutional claim to the trial court, and the court rejected it. As such, defendant's constitutional argument is preserved (see CPL 470.05 [2]), but, for the reasons that follow, is without merit.

As the Holmes Court acknowledged, states "have broad latitude under the Constitution to establish rules excluding evidence from criminal trials" (Holmes, 547 US at 324 [internal quotation marks and citation omitted]). That latitude is limited, however, by the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process and Confrontation Clauses, which guarantee "criminal defendants a meaningful opportunity to present a complete defense" (id. [internal quotation marks and citation omitted]; see People v Carroll, 95 NY2d 375, 385 [2000]). A defendant's right to present a defense "is abridged by evidence rules that infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve" (Holmes, 547 US at 324 [internal quotation marks and citation

omitted]).

In Holmes, the Supreme Court invalidated South
Carolina's rule precluding a defendant from introducing "proof of
third-party guilt if the prosecution ha[d] introduced forensic
evidence that, if believed, strongly support[ed] a guilty
verdict" on the ground that it violated a defendant's right to
have a meaningful opportunity to present a complete defense (id.
at 321).  In applying that rule, "the trial judge d[id] not focus
on the probative value or the potential adverse effects of
admitting the defense evidence of third-party guilt"; rather the
inquiry improperly focused on the strength of the prosecution's
case (id. at 329).  The South Carolina standard did not
rationally serve the justified end, namely "focus[ing] the trial
on the central issues by excluding evidence that has only a very
weak logical connection to the central issues" (id. at 330).

While acknowledging that exclusion of defendant's
evidence under such a test is prohibited by the Constitution, the
Supreme Court affirmed that "well-established rules of evidence
permit trial judges to exclude evidence if its probative value is
outweighed by certain other factors such as unfair prejudice,
confusion of the issues, or potential to mislead the jury" (id.
at 326) and that a "specific application of this principle is
found in rules regulating the admission of evidence proffered by
criminal defendants to show that someone else committed the crime
with which they are charged" (id. at 327).

The standard articulated in <u>Primo</u> is fully consistent with the <u>Holmes</u> principles discussed above.  Unlike the rule at issue in <u>Holmes</u>, the standard clarified by this Court in <u>Primo</u> focuses exclusively on the probative value of the third-party culpability evidence as weighed against its potential countervailing adverse effects.

In <u>Primo</u>, we rejected the "clear link" articulation of this standard that the Appellate Division apparently gleaned from our decision in <u>Greenfield v People</u> (85 NY 75 [1881]), noting that "[t]he <u>Greenfield</u> Court . . . said nothing to suggest that it was fashioning a new or specialized test for evidence of third-party culpability" (<u>Primo</u>, 96 NY2d at 354-355).  Accordingly, in <u>Primo</u>, we confirmed that no heightened standard exists for admission of third-party culpability evidence; instead admissibility of such evidence should be reviewed "under the general balancing analysis that governs the admissibility of all evidence" (<u>id.</u> at 356).  In other words, courts should "exclude evidence of third-party culpability that has slight probative value and strong potential for undue prejudice, delay and confusion" (<u>id.</u> at 357) or where the evidence is so remote and speculative that it does not sufficiently connect the third party to the crime (<u>see</u> <u>Holmes</u>, 547 US at 327).  We have reaffirmed this evidentiary standard in <u>People v Negron</u> (26 NY3d 262, 268 [2015]) and <u>People v Schulz</u> (4 NY3d 521, 528 [2005]).

The <u>Primo</u> standard for third-party culpability evidence

-- the general evidentiary balancing test -- does not infringe upon a defendant's constitutional right to present a complete defense. As the Holmes Court noted, rules applying the standard balancing test of prejudice versus probative value to proffers of third-party culpability evidence are "widely accepted" (547 US at 327). Requiring a defendant seeking to admit third-party culpability evidence to establish that the probative value of relevant evidence outweighs the appropriate countervailing factors is neither arbitrary nor disproportionate to the purpose of the rule. Indeed, in this context, "the countervailing risks of delay, prejudice and confusion are particularly acute" and "[i]f those concerns were not weighed against the probative value of evidence, the fact-finding process would break down under a mass of speculation and conjecture" (Primo, 96 NY2d at 356-357).

We review a trial court's determination concerning admissibility of third-party culpability evidence under an abuse of discretion standard (see Schulz, 4 NY3d at 529). Here, the trial court did not abuse its discretion by precluding defendant's ambivalent offer of proof of third-party culpability. Defendant repeatedly declined to accuse Warren of committing the murder, proffering instead that the proof would show "someone else could have killed [Katz]" or that "[defendant] is not the only one who could have been there." Given defendant's theory for admission -- that others could have had access to Katz's home or might have had reason to kill her -- the trial court did not

abuse its discretion by precluding the proffered evidence (see People v Gamble, 18 NY3d 386, 398-399 [2012] [speculative assertions that other unidentified individuals had a motive to harm a victim are insufficient to support admission of third-party culpability evidence]).

To be clear, admission of third-party culpability evidence does not necessarily require a specific accusation that an identified individual committed the crime. For example, a proffer of an unknown DNA profile may be sufficient. And we reject the trial court's assertion that such a specific accusation "is an essential element of third-party culpability." Such a requirement would conflict with the balancing analysis that we announced in Primo and reaffirm today. Nevertheless, defense counsel's argument must be assessed based on the proffer as articulated (see People v Collins, 109 AD3d 482, 482-483 [2d Dept 2013], lv denied 23 NY3d 1019 [2014] [refusing to address on appeal the defendant's new theory for admission of evidence]; cf. People v Reed, 84 NY2d 945, 947 [1994] [refusing to address on appeal the defendant's new theory for precluding admission of the People's evidence]). The trial court was within its discretion in finding that proffer speculative and in determining the evidence to support it would have caused undue delay, prejudice, and confusion.

During deliberations, the jury sent a note to the trial court asking: "If one inflicts a critical wound on a person and

does not assist the person, does the not assisting satisfy the question of intent to murder." Upon such a request for instruction, CPL 310.30 requires the court to "give such requested information or instruction as the court deems proper." The court must respond meaningfully to the request, but it is in the best position to evaluate the jury's request and has discretion in framing an appropriate response (see People v Steinberg, 79 NY2d 673, 684 [1992]; People v Almodovar, 62 NY2d 126, 131-132 [1984]). Here, contrary to defendant's assertion, the court responded meaningfully to the jury's question.

The trial court did not abuse its discretion by prohibiting Warren's sister from testifying or precluding evidence that a witness lied to parole office employees because such extrinsic evidence could not be used to impeach the witnesses on these collateral matters (see People v Knight, 80 NY2d 845, 847 [1992]). Finally, defendant's claim that the sentencing court improperly considered uncharged conduct when imposing sentence is unpreserved for review.

Accordingly, the Appellate Division order should be affirmed.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed. Opinion by Judge Garcia. Judges Pigott, Rivera, Abdus-Salaam, Stein and Fahey concur. Chief Judge DiFiore took no part.

Decided April 5, 2016