[960 NE2d 419, 936 NYS2d 650]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SHER-
MAN RIVERS, Appellant.

Argued October 20, 2011; decided November 22, 2011

**POINTS OF COUNSEL**

*Appellate Advocates*, New York City (*Jonathan M. Kratter* and *Lynn W.L. Fahey* of counsel), for appellant. I. Appellant was

denied a fair trial by the prosecutor's repeated failure to respect the letter and spirit of the trial court's *Molineux* rulings. (*People v Ventimiglia*, 52 NY2d 350; *People v Arafet*, 13 NY3d 460; *People v Alvino*, 71 NY2d 233; *People v Molineux*, 168 NY 264; *People v Fitzgerald*, 156 NY 253; *People v Vargas*, 88 NY2d 856; *People v Allweiss*, 48 NY2d 40; *People v Rojas*, 97 NY2d 32; *People v Resek*, 3 NY3d 385; *People v Vails*, 43 NY2d 364.) II. The trial court improperly permitted a battalion chief and two fire marshals to testify that the fires were intentionally set and how, and that they could not have resulted from natural or accidental causes. (*People v Brown*, 110 App Div 490; *People v Grutz*, 212 NY 72; *People v Bajraktari*, 154 AD2d 542; *People v Maxwell*, 116 AD2d 667; *People v Abreu*, 114 AD2d 853; *People v Negron*, 280 AD2d 557; *People v Goldberg*, 215 AD2d 402; *People v Johnson*, 186 AD2d 584; *People v Capobianco*, 176 AD2d 815; *People v Rivera*, 131 AD2d 518.)

*Charles J. Hynes, District Attorney*, Brooklyn (*Victor Barall* and *Leonard Joblove* of counsel), for respondent. I. The defendant's claim that he was deprived of a fair trial by the prosecutor's alleged failure to respect the "letter and spirit" of the court's *Molineux* rulings is unpreserved in part, and, moreover, is without merit. In any event, in light of the overwhelming evidence, any error in the prosecutor's failure to abide by the court's rulings was harmless. (*People v Crimmins*, 36 NY2d 230; *People v Matthews*, 68 NY2d 118; *People v Ventimiglia*, 52 NY2d 350; *People v Small*, 12 NY3d 732; *People v Calabria*, 94 NY2d 519; *People v Alicea*, 37 NY2d 601; *People v Arafet*, 13 NY3d 460; *People v Thomas*, 26 AD3d 188; *People v Brown*, 277 AD2d 974; *People v Hamilton*, 73 AD3d 408.) II. The defendant has, in part, failed to preserve his claim regarding the testimony of the two fire marshals and a fire battalion chief on the cause of the fires. Moreover, the claim is without merit. In any event, if the testimony was improperly admitted, the error was harmless. (*People v Grutz*, 212 NY 72; *People v Crimmins*, 36 NY2d 230; *People v El Machiah*, 71 AD3d 914; *People v Narrod*, 23 AD3d 1061; *People v Taylor*, 75 NY2d 277; *People v Brown*, 97 NY2d 500; *People v Qualls*, 55 NY2d 733; *People v Fleming*, 70 NY2d 947; *People v Miller*, 91 NY2d 372; *People v Cronin*, 60 NY2d 430; *People v Hicks*, 2 NY3d 750.)

### OPINION OF THE COURT

JONES, J.

Defendant was charged with numerous offenses, including three counts of arson in the first degree (Penal Law § 150.20),

in connection with two fires set five days apart in a four-story apartment building located at 408 Greene Avenue in Brooklyn, New York. The evidence adduced at trial established that defendant, who did not own the building, engaged in a scheme to profit from its illegal sale. Defendant gained control of the property by means of a forged and fraudulently notarized deed. He then contracted to sell it to a third party for $300,000. Pursuant to a clause in the sales contract, the property was to be delivered "vacant and free of leases or tenancies." To that end, defendant, on two occasions, paid others to set fires in the building to drive the tenants out. Defendant was convicted, upon a jury verdict, of three counts of arson in the first degree, one count relating to a fire set on May 25, 2004 (expectation of pecuniary profit), and the other two counts relating to a fire set on May 30, 2004 (expectation of pecuniary profit and use of an incendiary device).

On appeal, defendant argued that the prosecutor repeatedly violated the trial court's *Molineux* rulings (*see People v Molineux*, 168 NY 264 [1901] [for *Molineux* rule]; *People v Allweiss*, 48 NY2d 40, 46-48 [1979] [for summary of principles related to *Molineux* rule]) by eliciting evidence of an uncharged arson attempt and of his prior bad acts and associations—the elicited testimony linked defendant to violence, guns, the Nation of Islam, and a violent motorcycle gang. In defendant's view, the prosecutor's repeated violations of the court's *Molineux* rulings cumulatively denied him the right to a fair trial (*see People v Calabria*, 94 NY2d 519, 522 [2000]).

Defendant further argued that the elicited expert testimony concerning the origins of the fires was inadmissible under *People v Grutz* (212 NY 72, 82 [1914] ["The physical facts" of an arson are always "so simple that they can be readily understood when properly described, and it is then for the jury to draw the appropriate conclusion," without guidance of expert opinion]) and *People v Narrod* (23 AD3d 1061, 1062 [4th Dept 2005] [it was error to allow an "arson investigator to testify that he had ruled out accidental causes of the fire"]).[1] According to defendant, the experts' improper testimony invaded the jury's province and denied him the right to a fair trial.

---

1. With respect to the first fire, a battalion chief testified that "it appeared a flammable liquid had been put on the stairs and lit on fire" and "[t]here was no other apparent cause for the fire." The chief further testified that the second fire was "suspicious."

The Appellate Division affirmed the convictions, stating that any error concerning the contested testimony was harmless (74 AD3d 995, 995 [2d Dept 2010]). A Judge of this Court granted defendant leave to appeal and we now affirm.

■ Although, as the People concede, certain questions asked by the prosecutor at trial clearly violated the trial court's *Molineux* rulings, the contested testimony elicited, on the whole, was not significant. That is, if defendant was prejudiced at all, such prejudice was minimal. Each time after defendant moved for a mistrial based on an alleged violation of the court's *Molineux* rulings, the trial court, in its discretion, considered the arguments of the parties, concluded that what happened did not rise to the level of a mistrial and, in certain instances, provided further instruction to counsel to refrain from making statements regarding improper topics. For example, at the conclusion of the prosecutor's opening statement, defendant moved for a mistrial, arguing, inter alia, that the prosecutor's references to the Nation of Islam and Muslims were intended to inflame and prejudice the jury. After ruling that a mistrial was not warranted, the court told the prosecutor to "stay focused" and to avoid the appearance of stereotyping certain individuals just because they are members of the Nation of Islam and/or Muslims.

The trial court also took steps to minimize the impact of arguably improper testimony or prosecutorial statements during the trial. For example, after the prosecutor made conclusory statements of fact during his opening statement, the court sustained defense counsel's objection and reminded the jurors in no uncertain terms that "what counsel says is not evidence in the case. Rather, you may consider the opening statement as a preview or an outline of what counsel believes the evidence will prove in this case."

---

The fire marshal who investigated the first fire testified that the "pour pattern" indicated that a flammable liquid had run from one step down to the next and been ignited. He further testified that there are three causes of fires, "[a]ccidental, natural and non-accidental," and that the fire was neither natural nor accidental but must have originated "[i]n the vapors of a flammable liquid that was introduced to the steps."

The fire marshal who investigated the second fire testified that he eliminated accidental causes of the fire due to the absence of any ignition sources and natural causes because there had been no lightning. He further testified that "[t]he fire was originated by vapors of a flammable liquid introduced." Finally, he testified that his findings were consistent with the use of an incendiary device such as a Molotov cocktail.

In any event, to the extent any evidence subject to the trial court's *Molineux* rulings was improperly admitted, such error was harmless (*see People v Crimmins*, 36 NY2d 230, 240-242 [1975]). The evidence against defendant, from his own taped admissions, and testimony of the individual who set the first fire at defendant's behest, overwhelmingly established defendant's guilt of the crimes charged. Further, there was no reasonable possibility or significant probability that the improper questions and elicited references to defendant's bad acts and negative associations affected the jury's verdict, or that the absence of such errors would have led to an acquittal.

Defendant's second argument—that the expert testimony, ruling out accidental and natural causes of the fires and concluding that one of the fires was intentionally set, invaded the jury's province—is equally unavailing. At the outset, we consider the rule set forth in *Grutz* prohibiting expert testimony concerning whether a fire was intentionally set. This prohibition occurs as dictum in an opinion written in 1914—at a time when fire investigations involved far less technical expertise than they do today. Nevertheless *Grutz* is still frequently cited for the proposition that an expert may not invade the province of the jury by testifying that a fire was intentionally set[2] or that the facts are "consistent" with an intentionally set fire.[3] It has continued to be cited even after Appellate Division panels have held that an arson expert may testify to a reasonable degree of scientific certainty that, based on the expert's investigations, all possible natural and accidental causes of the fire had been eliminated[4]—thus eliminating all but intentional causes.

The result is that the law in New York is at once confusing and anomalous. As the Connecticut Supreme Court has recently noted,

> "the rule, followed by the courts of New York and Virginia, that precludes an expert witness from giving an opinion about the ultimate issue in arson cases, namely, whether the fire was intentionally set

---

**2.** See e.g. *People v Champion* (247 AD2d 901, 901 [4th Dept 1998], *lv denied* 91 NY2d 971 [1998]); *People v Avellanet* (242 AD2d 865, 866 [4th Dept 1997], *lv denied* 91 NY2d 868 [1997]).

**3.** See e.g. *People v Negron* (280 AD2d 557, 558 [2d Dept 2001]).

**4.** See e.g. *People v Capobianco* (176 AD2d 815, 816 [2d Dept 1991], *lv denied* 79 NY2d 825 [1991]); *Champion* (247 AD2d at 901); *Avellanet* (242 AD2d at 866); *People v Maxwell* (116 AD2d 667, 668 [2d Dept 1986], *lv denied* 67 NY2d 886 [1986]).

. . . is a distinct minority position that stands in stark contrast to the 'modern trend,' which is 'to abolish the ultimate issue prohibition' " (*State v Beavers*, 290 Conn 386, 417 n 27, 963 A2d 956, 977 n 27 [2009], quoting 1 Paul C. Giannelli and Edward J. Imwinkelried, Scientific Evidence § 5.07, at 321 [4th ed 2007], and citing cases).

We now put the *Grutz* proposition to rest. New York has a well-established body of case law concerning the admissibility and limits of expert testimony, that should be brought to bear in deciding what an arson expert may tell the jury in a particular case. "The guiding principle is that expert opinion is proper when it would help to clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror" (*De Long v County of Erie*, 60 NY2d 296, 307 [1983] [citations omitted]; *see People v Taylor*, 75 NY2d 277, 288 [1990] [same]). Moreover, this principle applies to testimony regarding both "the ultimate questions and those of lesser significance" (*People v Cronin*, 60 NY2d 430, 432-433 [1983]).

Although, in deciding whether expert testimony is admissible, courts must determine whether "the potential value of the evidence is outweighed by the possibility of undue prejudice to the defendant or interference with the province of the jury" (*People v Bennett*, 79 NY2d 464, 473 [1992]), "courts should be wary not to exclude such testimony merely because, to some degree, it invades the jury's province" (*People v Lee*, 96 NY2d 157, 162 [2001]). "Expert opinion testimony is used in partial substitution for the jury's otherwise exclusive province which is to draw 'conclusions from the facts.' It is a kind of authorized encroachment in that respect" (*People v Jones*, 73 NY2d 427, 430-431 [1989] [citation omitted], quoting *Cronin*, 60 NY2d at 432). Obviously, expert testimony would not generally be admissible in a case where the fire's cause is not in question.

■ Here, because the evidence adduced at trial conclusively established, apart from the expert testimony, that the subject fires were intentionally set, it can be argued that the admission of expert testimony was largely unnecessary. In any event, any error was harmless, because the evidence of defendant's guilt was overwhelming and there was no significant probability that the jury would have acquitted defendant without the expert testimony (*see Crimmins*, 36 NY2d at 240-242).

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge Lɪᴘᴘᴍᴀɴ and Judges Cɪᴘᴀʀɪᴄᴋ, Gʀᴀꜰꜰᴇᴏ, Rᴇᴀᴅ, Sᴍɪᴛʜ and Pɪɢᴏᴛᴛ concur.

Order affirmed.