■ The People of the State of New York, Respondent, v Noel T. Russell, Appellant. [983 NYS2d 105]—

Garry, J. Appeal from a judgment of the County Court of Sullivan County (McGuire, J.), rendered May 9, 2012, upon a verdict convicting defendant of the crimes of predatory sexual assault (two counts), predatory sexual assault against a child (two counts) and incest in the first degree (two counts).

In March 2011, the victim (born in 1999) told a friend that defendant had been sexually abusing her. The friend told school officials and, after an investigation, defendant was charged with various crimes. Following defendant's second jury trial,[1] he was convicted of predatory sexual assault (two counts), predatory sexual assault against a child (two counts), and incest in the first degree (two counts). County Court sentenced him to an aggregate prison term of 46 years to life. Defendant appeals.

Defendant first contends that count 7 of the indictment—which charged defendant with incest in the first degree committed between September 1, 2010 and March 2, 2011—should be dismissed because it is duplicitous and because the period of time alleged is too long to provide defendant with fair notice of the crime charged. The People concede that the count is duplicitous, but contend that defendant did not preserve his claims. While we agree that defendant's contentions are unpreserved as he did not move for dismissal, we nonetheless exercise our interest of justice jurisdiction. Notably, defendant raised the related issue of notice by moving to preclude the People from presenting evidence unless more precise dates were provided in support of this count, as well as counts 5 and 6, which alleged predatory sexual assault and predatory sexual assault against a child, respectively. In response, the People stated that at least one of the acts forming the basis of these three charges occurred between September 1, 2010 and the end of November 2010, and

---

1. Defendant's first trial resulted in a deadlocked jury. During that trial, count 1 of the indictment was dismissed.

that multiple acts occurred during the remaining four months; the victim testified that an act of vaginal sexual intercourse occurred in the fall of 2010 following her return to school in September, and at least 10 acts occurred thereafter. The jury was instructed to convict defendant on count 7 if it found that he committed rape in the first degree against the victim between September 1, 2010 and March 2, 2011.

"Each count of an indictment may charge one offense only" (CPL 200.30 [1]). A count that charges a single criminal act is duplicitous if the evidence reveals that multiple acts occurred during the time period in question (*see People v Keindl*, 68 NY2d 410, 416-417 [1986]; *People v Black*, 65 AD3d 811, 813 [2009], *lv denied* 13 NY3d 905 [2009]). While this rule necessarily does not apply to a crime based on a continuing course of conduct—such as the predatory sexual assault charges against defendant—"[m]ultiple rapes of the same victim are not a continuing offense. Each act of intercourse is a separate and distinct offense" (*People v Dalton*, 27 AD3d 779, 781 [2006], *lv denied* 7 NY3d 754 [2006], *lv denied upon reconsideration* 7 NY3d 811 [2006] [internal quotation marks, brackets and citations omitted]). The challenged count violated these rules. Accordingly, we dismiss count 7 on the ground that it is duplicitous (*see People v Pryce*, 41 AD3d 983, 984 [2007], *lv denied* 9 NY3d 880 [2007]; *People v Dunton*, 30 AD3d 828, 829 [2006], *lv denied* 7 NY3d 847 [2006]; *compare People v Hayes*, 104 AD3d 1050, 1052-1053 [2013], *lv denied* 22 NY3d 1041 [2013]; *People v Tomlinson*, 53 AD3d 798, 799 [2008], *lv denied* 11 NY3d 835 [2008]).[2]

Defendant next contends that the verdict was against the weight of the evidence because the victim's uncorroborated testimony was unworthy of belief. There were no eyewitnesses, the People presented no physical evidence, and defendant did not testify; thus, the credibility of the victim was critical to the jury's determination. She described an occasion in July 2010 when defendant approached her from behind in the bathroom and anally raped her, followed by another incident sometime after her return to school in September 2010 when he vaginally raped her in his bedroom. She testified that when she told defendant to stop, he warned her to "shut up or I'll take you away

---

**2.** We need not resolve defendant's related claim that the six-month time period alleged was unreasonably long (*see e.g. People v Clevenstine*, 68 AD3d 1448, 1449 [2009], *lv denied* 14 NY3d 799 [2010]), but note that the issues of duplicity and notice are interrelated, as one of the purposes of the prohibition against duplicity is to provide the defendant with fair notice of the particular charge against him or her "so as to enable him [or her] to answer to the charges and to prepare an adequate defense" (*People v Keindl*, 68 NY2d at 416-417; *see People v Beauchamp*, 74 NY2d 639, 640-641 [1989]).

forever." The victim stated that defendant sexually abused her on more than 10 subsequent occasions, that she did not tell anyone about these events at first because defendant "always promised" that he would stop when she was 12 or 13 years old, and that she eventually told a friend what was happening because she wished to protect her younger sister and was "tired of having [the abuse] happen."

On cross-examination, defense counsel challenged the victim's credibility by, among other things, eliciting her admission that she had "held [herself] out on a social network site as being an amazing liar or good liar."[3] He further obtained the victim's admission that she had testified during her direct examination that she had not gotten into trouble at her current school when, in truth, she had been suspended on one occasion; when confronted, the victim initially testified that she had forgotten the suspension, but then acknowledged that she had testified falsely. Defendant further points to the lack of detail in the victim's account of events, and to an inconsistency between her testimony and the testimony of her pediatrician as to her experience of pain from the abuse. However, " 'it is not uncommon for young children to be uncertain and even inconsistent in their trial testimony' " (*People v Stewart*, 20 AD3d 769, 770 [2005], quoting *People v Raymo*, 19 AD3d 727, 728 [2005], *lv denied* 5 NY3d 793 [2005]). Contrary to defendant's contention, we do not find that these discrepancies rendered the victim's testimony inherently unbelievable or incredible as a matter of law (*see People v Texidor*, 71 AD3d 1190, 1193 [2010], *lv denied* 14 NY3d 893 [2010]; *People v Wallis*, 24 AD3d 1029, 1031 [2005], *lv denied* 6 NY3d 854 [2006]). We further note that most of the inconsistencies were unrelated to the crimes for which defendant was convicted (*see People v Din*, 110 AD3d 1246, 1247 [2013]). There was no showing that the victim had a reputation for untruthfulness or that she had ever lied on important matters or manipulated the truth for the purpose of harming someone (*compare People v Fernandez*, 106 AD3d 1281, 1284-1285 [2013]; *People v O'Neil*, 66 AD3d 1131, 1134 [2009]). Most significantly, the issues now raised by defendant were fully revealed and explored during the victim's cross-examination. According great deference to the jury's opportunity to view the victim's demeanor and assess her credibility in light of these concerns, we do not find that the verdict was against the weight of the evidence (*see People v Fernandez*, 106 AD3d at 1285-1286;

---

**3.** Although not clarified in the record, it appears from the parties' arguments that this representation was related to the results of a quiz or questionnaire that the victim posted on her Facebook page.

*People v Beauharnois*, 64 AD3d 996, 999 [2009], *lv denied* 13 NY3d 834 [2009]; *People v Allen*, 13 AD3d 892, 893-894 [2004], *lv denied* 4 NY3d 883 [2005]).

However, we reverse and remit for a new trial due to County Court's errors in repeatedly denying defendant's challenges for cause to jurors who made statements that called their impartiality into question. It is well established that "a prospective juror whose statements raise a serious doubt regarding the ability to be impartial must be excused unless the juror states unequivocally on the record that he or she can be fair and impartial" (*People v Chambers*, 97 NY2d 417, 419 [2002]; *accord People v Harris*, 19 NY3d 679, 685 [2012]; *see People v Arnold*, 96 NY2d 358, 363 [2001]). When a juror's impartiality is in doubt, it is the court's obligation to make further inquiries and to excuse the juror if the doubt is not fully dispelled (*see People v McLean*, 24 AD3d 1110, 1111 n [2005]). In this respect, the court should err on the side of disqualification, as "the worst [it] will have done in most cases is to have replaced one impartial juror with another impartial juror" (*People v Johnson*, 94 NY2d 600, 616 [2000] [internal quotation marks and citation omitted]; *see* CPL 270.20 [1] [b]; [2]; *People v Izzo*, 104 AD3d 964, 966 [2013], *lv denied* 21 NY3d 1005 [2013]). Conversely, the denial of a challenge for cause to a biased juror calls fundamental fairness into question and "casts a doubt on the legitimacy of the verdict even before the trial begins" (*People v Culhane*, 33 NY2d 90, 108 n 3 [1973]; *see People v Burdo*, 256 AD2d 737, 741-742 [1998]).

Here, one juror stated that his job experience as a correction officer "might" affect his ability to be impartial; when asked whether his employment would prevent him from applying "basic principles" granting certain rights to defendant, he responded, "It may." A second juror said that her husband's employment in law enforcement "could" cause her to give greater weight to a police officer's testimony, and a third juror said that he could not "guarantee" that he would follow an instruction not to grant greater weight to such testimony. A fourth juror stated that her husband's work as a sheriff's deputy would "[p]ossibly" cause her to hesitate in providing defendant his constitutional protections; she further confirmed that she would be reluctant to apply the presumption of innocence. A fifth juror said that she believed that children who accused parents of sexual abuse could not lie, and a sixth juror agreed with other jurors that it was "highly unlikely" that a child would lie about this subject, and that it was probable that such a charge must be true because of its seriousness. Finally, a

seventh juror expressed doubt when asked whether she would draw an adverse inference from a defendant's choice not to testify, explaining that "it brings the question up why wouldn't you[?]" Although she stated that she would follow the judge's instructions in this regard, she added that she could not "control myself to take something that's already in my mind away." The prosecutor advised County Court that at least one of these jurors required rehabilitation because of such expressions of uncertainty, stating that "there should be inquiry from the court." Nevertheless, the jurors were not questioned further, and none made "unequivocal assertion[s] of impartiality" (*People v Chambers*, 97 NY2d at 419). As defendant exhausted his peremptory challenges after using them on these jurors, each of the court's errors in denying his challenges for cause requires the reversal of his convictions (*see* CPL 270.20 [2]; *People v McGuire*, 101 AD3d 1386, 1388-1389 [2012]; *People v McLean*, 24 AD3d at 1111; *People v Heath*, 24 AD3d 876, 877 [2005], *lv denied* 6 NY3d 813 [2006]).

Defendant's remaining contentions are rendered academic by this determination.

Lahtinen, J.P., Stein and McCarthy, JJ., concur. Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, count 7 of the indictment dismissed, and matter remitted to the County Court of Sullivan County for a new trial on counts 2, 3, 4, 5 and 6 of the indictment.

