(October 12, 2017)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GANESH R. RAMSARAN, Appellant. [62 NYS3d 555]—

Mulvey, J. Appeal (upon remittal from the Court of Appeals) from a judgment of the County Court of Chenango County (Revoir Jr., J.), rendered December 1, 2014, upon a verdict convicting defendant of the crime of murder in the second degree.

Following a jury trial, defendant was convicted of the intentional second degree murder of his wife, Jennifer Ramsaran (hereinafter the victim), and sentenced to 25 years to life in prison. On appeal, this Court rejected defendant's challenges to the legal sufficiency and weight of the evidence supporting the jury's verdict, but concluded that defendant had been deprived of the effective assistance of counsel based upon defense counsel's failure, among other things, to object to the prosecutor's summation, which we found had mischaracterized the DNA evidence (141 AD3d 865 [2016]). The Court of Appeals thereafter reversed, holding that defendant had not been deprived of meaningful representation (29 NY3d 1070 [2017]). The Court of Appeals remitted the case to this Court "for consideration of issues raised but not determined on appeal" (*id.* at 1071). We have considered the remaining issues raised by defendant on appeal, only some of which warrant discussion. Given our conclusion that none of the claims requires reversing the judgment of conviction, we affirm.

Initially, we address defendant's claim that evidentiary errors occurred. We find no merit in defendant's contention that County Court deprived him of his Sixth Amendment right to confront witnesses when it sustained the People's objection to his cross-examination of Eileen Sayles, the victim's close friend with whom defendant had been having a 10-month affair. On direct examination, Sayles testified that defendant loved her, they had sexual relations regularly and they had discussed divorcing their spouses, moving in together and raising their children as a family. This testimony was consistent with the People's theory, supported by ample proof at trial, that defend-

ant was consumed with his desire to be with Sayles, and that his motive in killing the victim was to avoid the costs of divorce and pursue his relationship with Sayles, whom he considered to be his "soul mate." On cross-examination of Sayles, the defense attempted to elicit from her that defendant had stated his intent to take care of the victim financially after their divorce. This statement was inadmissible hearsay that did not constitute a declaration against defendant's penal interest, as it was not contrary to his interest and he was available to testify (*see People v Settles*, 46 NY2d 154, 167 [1978]; *People v Sheppard*, 119 AD3d 986, 989-990 [2014], *lv denied* 22 NY3d 1203 [2014]; *People v Valderrama*, 285 AD2d 902, 904 [2001], *lv denied* 97 NY2d 659 [2001]; *see also People v DiPippo*, 27 NY3d 127, 136-137 [2016]). Further, defendant did not identify—and the record does not reflect—any "supportive evidence [that] . . . establishe[d] a reasonable possibility that the statement might be true" (*People v Soto*, 26 NY3d 455, 462 [2015] [internal quotation marks, brackets and citation omitted]). Contrary to defendant's claims, defense counsel did not seek to elicit this self-serving statement as an admission for the nonhearsay purpose of establishing defendant's state of mind; rather, counsel sought to introduce it in defendant's favor to prove the truth of the matter asserted and to refute the evidence of his motive. We discern no abuse of discretion or denial of defendant's right to cross-examine witnesses in the court's preclusion of this gratuitous testimony (*see People v Reynoso*, 73 NY2d 816, 819 [1988]; *People v Soriano*, 121 AD3d 1419, 1422 [2014]; *People v Pearson*, 28 AD3d 587, 587-588 [2006], *lv denied* 7 NY3d 793 [2006]; *see also People v Hayes*, 17 NY3d 46, 53 [2011], *cert denied* 565 US 1095 [2011]).

Defendant's claim that the People failed to disclose *Brady* material was not preserved by an objection at trial or by a request for a limiting instruction and, in any event, no violation occurred (*see Brady v Maryland*, 373 US 83 [1963]). The defense elicited on cross-examination of Sayles that defendant had never hurt her or the victim in the past—matters that went beyond the scope of the direct examination.* On redirect examination, the People rebutted this by establishing that, after the victim went missing, defendant had grabbed Sayles' arm and dragged her into his house when she tried to leave. This information was not exculpatory and, to the extent that it was impeachment material, defendant opened the door to it

---

* On direct examination, Sayles testified that defendant had, on occasion, become angry and verbally abusive to her and to the victim. She was not asked if he had ever been physically abusive.

and made Sayles his witness; thus, the People were entitled to rebut and impeach her testimony (*see People v Garrett*, 23 NY3d 878, 884-886 [2014]; *People v Montgomery*, 22 AD3d 960, 962 [2005]). While a limiting instruction should have been given (*see People v Wlasiuk*, 90 AD3d 1405, 1413 [2011]), the testimony was circumscribed, and there is no "reasonable probability" that, had the impeachment material been timely disclosed, the verdict would have been different (*People v Garrett*, 23 NY3d at 891 [internal quotation marks and citations omitted]).

Next, we perceive no abuse of discretion in County Court's ruling precluding defense counsel from questioning the victim's online friend about the victim's alleged statements that she was being stalked by someone online. This ruling was correct and did not infringe on defendant's right to present a defense (*see People v Powell*, 27 NY3d 523, 526, 531 [2016]). While defense counsel, in part, pursued the theory at trial that the police had not investigated other leads, he conceded during the offer of proof on this matter that he was *not* trying to elicit this hearsay to show that the alleged "stalker might have killed [the victim]," undermining any claim that it constituted third-party culpability evidence (*see id.* at 531-532; *People v Primo*, 96 NY2d 351, 356-357 [2001]). Moreover, the proffered testimony was "so remote and speculative that it d[id] not sufficiently connect the third party to the crime" (*People v Powell*, 27 NY3d at 531; *compare People v DiPippo*, 27 NY3d at 135-138; *People v Gamble*, 18 NY3d 386, 398 [2012]). Nor was the testimony admissible to prove the victim's state of mind at some undefined time in the past, as the defense failed to establish its relevance and, in fact, it was only relevant if offered to prove the truth of the matter asserted—that the victim was being stalked—which rendered it inadmissible hearsay (*see People v Reynoso*, 73 NY2d at 819; *People v Goodluck*, 117 AD3d 653, 654 [2014], *lv denied* 23 NY3d 1062 [2014]).

Likewise, County Court properly exercised its discretion in permitting photographs of the victim prior to her murder. While photographs of victims when alive are "generally inadmissible at trial," they may be admitted when they are "relevant to a material fact to be proved at trial" (*People v Nelson*, 27 NY3d 361, 370 [2016], *cert denied* 580 US —, 137 S Ct 175 [2016]; *see People v Stevens*, 76 NY2d 833, 835 [1990]). The photographs depicting the victim were relevant to and probative of the People's central theory that defendant disapproved of the victim's appearance and was motivated to kill her, in part, by his desire to be with Sayles, whose appearance he perceived as

more attractive (*compare People v Stevens*, 76 NY2d at 836; *People v Drouin*, 115 AD3d 1153, 1156 [2014], *lv denied* 23 NY3d 1019 [2014]).

Defendant also challenges the admission of testimony and evidence regarding photographs of himself and either Sayles or the victim, jailhouse phone calls between himself and Sayles, and Facebook conversations between himself and Sayles. He contends that this evidence, much of which was sexually explicit in nature, was improperly admitted to prove his criminal propensity and bad character in violation of *Molineux* (*see People v Leonard*, 29 NY3d 1, 6-7 [2017]; *People v Leeson*, 12 NY3d 823, 826-827 [2009]). Defendant objected to some but not all of this evidence, which did not concern uncharged crimes. As a general rule, "evidence of uncharged crimes or prior bad acts may be admitted where they fall within the recognized *Molineux* exceptions—motive, intent, absence of mistake, common plan or scheme and identity—or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative" (*People v Anthony*, 152 AD3d 1048, 1051 [2017] [internal quotation marks and citations omitted]). Assuming that such evidence reflected defendant's immoral character or prior bad acts under *Molineux*, County Court properly found that it was relevant to and highly probative of defendant's obsession with Sayles and being with her, as well as his preoccupation and compulsion with sex and his motive to kill the victim (*see People v Babcock*, 152 AD3d 962, 964 [2017]; *People v Sorrell*, 108 AD3d 787, 791 [2013], *lv denied* 23 NY3d 1025 [2014]). It also provided the necessary background information regarding the nature of defendant's relationship with the victim and Sayles, and his disapproval of the victim, and "placed the charged conduct in context" (*People v Dorm*, 12 NY3d 16, 19 [2009]).

Where, as here, "there is a proper nonpropensity purpose, the decision whether to admit such evidence rests upon the trial court's discretionary balancing of probative value and unfair prejudice" (*People v Leeson*, 12 NY3d at 826-827 [internal quotation marks, brackets, ellipsis and citation omitted]; *see People v Babcock*, 152 AD3d at 964). County Court engaged in the required "case-specific discretionary balancing of probity versus prejudice" (*People v Inman*, 151 AD3d 1283, 1284 [2017] [internal quotation marks and citations omitted]). The court excluded or limited much of the evidence or only permitted it to be generally described in testimony without showing it to the jury, limited to five the number of jailhouse calls that were played for the jury and excluded a video of de-

fendant's sexual activity with the victim as unduly prejudicial. We find no abuse of discretion in the court's conclusion that the probative value of the admitted evidence outweighed its prejudicial effect, and note that the court "mitigated any undue prejudice by providing limiting instructions" on several occasions (*People v Anthony*, 152 AD3d at 1051 [internal quotation marks and citation omitted]). Any error in this regard was harmless (*see People v Goodrell*, 130 AD3d 1502, 1503 [2015]).

Finally, defendant argues that the medical examiner should not have been permitted to offer his medical opinion that the manner of death was homicide. Defense counsel did not object to this testimony, rendering this claim unpreserved for our review (*see* CPL 470.05 [2]). In any event, "[t]he guiding principle is that expert opinion is proper when it would help to clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror," and it applies to testimony regarding the ultimate issue before the jury (*People v Rivers*, 18 NY3d 222, 228 [2011] [internal quotation marks and citation omitted]; *see Hurrell-Harring v State of New York*, 119 AD3d 1052, 1053 [2014]). The medical examiner explained that the cause of the victim's death could not be determined, although the condition of her body was consistent with death occurring on December 11, 2012, the day that she disappeared. He offered his medical opinion as to the manner of death, after ruling out all other possible explanations for how the death came about, which he explained was based upon his observations during the autopsy and the condition and location of the victim's body. As we find no abuse of discretion in permitting this testimony, we discern no basis upon which to take corrective action in the interest of justice (*see People v Nicholson*, 26 NY3d 813, 828 [2016]; *People v Campanella*, 100 AD3d 1420, 1420-1421 [2012], *lv denied* 20 NY3d 1060 [2013]; *People v Odell*, 26 AD3d 527, 529 [2006], *lv denied* 7 NY3d 760 [2006]; *compare People v Every*, 146 AD3d 1157, 1166 [2017], *affd* 29 NY3d 1103 [2017]). We have examined defendant's remaining contentions and determined that none has merit.

Peters, P.J., Rose and Aarons, JJ., concur. Ordered that the judgment is affirmed.